ORIGINAL
FILED

MAY - 9 2007

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

1   Andrew Schwartz (State Bar No. 100210)
    Frank Sommers (State Bar No. 109012)
2   **SOMMERS & SCHWARTZ LLP**
    550 California Street
3   Sacramento Tower, Suite 700
    San Francisco, CA 94104
4   Telephone: (415) 955-0925
    Facsimile: (415) 955-0927
5
    Attorneys for Plaintiff Intelligraphics, Inc.
6

E-filing

7                   UNITED STATES DISTRICT COURT

8                  NORTHERN DISTRICT OF CALIFORNIA

9

10  INTELLIGRAPHICS, INC                Case No. **C 07   2499**

11                  Plaintiff,          **COMPLAINT FOR**
                                        **BREACH OF CONTRACT;**
12      vs.                             **BREACH OF IMPLIED CONTRACT** JCS
                                        **FRAUD IN THE INDUCEMENT;**
13  MARVELL SEMICONDUCTOR, INC.         **DECLARATORY RELIEF --**
                                        **EQUITABLE ESTOPPEL;**
14                  Defendants.         **COPYRIGHT INFRINGEMENT;**
                                        **AND QUANTUM MERUIT**
15

16      Plaintiff INTELLIGRAPHICS, INC. ("INTELLIGRAPHICS") by its undersigned

17  attorneys alleges as follows:

18                           **THE PARTIES**

19      1.      INTELLIGRAPHICS is a Texas corporation with its principal place of business at

20  1401 North Central Expressway, Suite 320, Richardson, Texas 75080.

21      2.      MARVELL SEMICONDUCTOR, INC. ("MARVELL") is a California

22  Corporation with its principal place of business located at 5488 Marvell Lane Santa Clara, CA

23  95054.

24                    **JURISDICTION AND VENUE**

25      3.      This Court has subject matter jurisdiction over the Sixth Cause of Action herein

26  (Copyright Infringement) 17 U.S.C. § 501 and 28 U.S.C. §§ 1331 and 1338(a) in that the claims

27

28                                                                              1
    COMPLAINT FOR BREACH OF CONTRACT; BREACH OF IMPLIED CONTRACT FRAUD IN THE
        INDUCEMENT; DECLARATORY RELIEF – EQUITABLE ESTOPPEL; COPYRIGHT
                      INFRINGEMENT; AND QUANTUM MERUIT

1    arise under the laws of the United States.  This Court has subject matter jurisdiction over the

2    First, Second, Third, Fourth, Fifth and Seventh Causes of Action pursuant to 28 U.S.C. § 1332(a)

3    in that the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and

4    costs and is between citizens of different States.  In addition, this court has subject matter

5    jurisdiction over the First, Second, Third, Fourth, Fifth and Seventh Causes of Action pursuant to

6    28 U.S.C. § 1367 (a) and the principles of supplemental jurisdiction.

7         4.     Venue is proper in the Northern District of California under 28 U.S.C. §§ 1391

8    (b) and (c) and 1400 (a) because Defendant is subject to personal jurisdiction in this state since

9    Defendants have purposefully availed themselves of the privilege of conducting business in this

10   District, the claims arise from Defendants forum-related activities, a substantial part of the events

11   giving rise to Plaintiff's claims occurred, or should be deemed to have occurred, within this

12   judicial district and the exercise of jurisdiction is reasonable, given that the Software

13   Development and Licensing Agreement at issue herein states that: "Any legal action arising

14   under this Agreement will be brought solely in the federal courts of the Northern District of

15   California and any state courts located therein, and both parties due (sic) hereby irrevocably

16   consent to the exclusive jurisdiction and venue of such courts."

17                          **NATURE OF THE CASE**

18        5.     Defendant MARVELL produces microchips for use in computer processors.  In

19   2003, MARVELL engaged with INTELLIGRAPHICS to provide driver software for its new

20   802.11 wireless networking chip product.

21        6.     Plaintiff INTELLIGRAPHICS is a company that develops and licenses specialized

22   and customized device driver and system level software.  INTELLIGRAPHICS had existing

23   802.11 wireless networking driver software and the ability to customize and extend that software

24   so that it met with Defendant MARVELL's requirements.

25                    **Initial Contract Negotiations & First Project**

26        7.     The parties hereto entered into a "SOFTWARE DEVELOPMENT AND

27   LICENSE AGREEMENT" ("the SDLA") in July 2003.  The SDLA set out the terms that

28
                                                                              2

**COMPLAINT FOR BREACH OF CONTRACT; BREACH OF IMPLIED CONTRACT FRAUD IN THE
INDUCEMENT; DECLARATORY RELIEF – EQUITABLE ESTOPPEL; COPYRIGHT
INFRINGEMENT; AND QUANTUM MERUIT**

1   governed the licensing and customization of the 802.11 drivers and related custom software that

2   were to be provided to MARVELL. The contract was set up such that the price to be paid for the

3   work on each piece of "Custom Software" developed thereunder was to be set out in a

4   "Development Schedule with Milestone Deliverables" for each individual "Custom Software"

5   project. The "Development Fee" for each piece of software was defined as the total of all related

6   "Milestone" payments. Exhibit C to the contract set out a series of Milestone Deliverables, each

7   associated with a fixed fee. The contract then declared that <u>only</u> when a specific Milestone

8   Deliverable for a specific software project was delivered by INTELLIGRAPHICS and accepted

9   by MARVELL, per a Statement of Acceptance – and INTELLIGRAPHICS received payment in

10  full for that Milestone Deliverable by MARVELL – were the intellectual property rights to that

11  specific Milestone Deliverable transferred from INTELLIGRAPHICS to MARVELL.

12      8.    The intellectual property provisions of the SDLA first granted MARVELL a non-

13  exclusive provisional license to INTELLIGRAPHICS's existing Basic 802.11-related modules

14  (The "Base Code") which would ultimately be incorporated into the final product being created

15  for MARVELL (*see* SDLA ¶ 1.3) . The Base Code license was necessitated by MARVELL's

16  need to properly test and inspect the software and to evaluate the actual performance of the

17  software prior to acceptance.

18      9.    The SDLA then provided that the individual pieces of Custom Software developed

19  under each Scope of Work would be the property of INTELLIGRAPHICS until it received

20  payment for the completed Milestone Deliverables from MARVELL -- an event that would occur

21  only after INTELLIGRAPHICS completed the development of and delivered specific Milestone

22  Deliverables of the Custom Software and MARVELL approved and accepted them. Specifically,

23  the SDLA provided that – in a paragraph entitled "Ownership by MARVELL of the Custom

24  Software" – "At such time as MARVELL has paid the applicable Development Fee for each

25  Milestone Deliverable delivered by Intelligraphics and accepted by MARVELL, then

26  MARVELL shall assume ownership of such Milestone Deliverable and all Intellectual Property

27  Rights Therein."

28

**COMPLAINT FOR BREACH OF CONTRACT; BREACH OF IMPLIED CONTRACT FRAUD IN THE
INDUCEMENT; DECLARATORY RELIEF – EQUITABLE ESTOPPEL; COPYRIGHT
INFRINGEMENT; AND QUANTUM MERUIT**

1       10.    INTELLIGRAPHICS completed the 802.11 project in 2003 and MARVELL

2    accepted and paid for it.

3       11.    By the time the parties began developing the more recent "Scope of Work"

4    Attachments to the 2003 Agreement, the parties had changed their definition of "Development

5    Fee" to be based on a "time and materials" billing, rather than fixed fee.  This new definition of

6    the Development Fee for these projects was specifically incorporated into individual

7    Amendments (with attendant SOW Attachments for the new projects for which such documents

8    were created).

9       12.    Between 2003 and 2005, INTELLIGRAPHICS performed  three additional

10    projects for MARVELL, one, the "Soft AP-Security Project," was performed on an hourly basis

11    and was not documented in any Amendments or Attachments to the contract. The second, the

12    "QoS Project," was started in 2004 and was the subject of Attachments 1, 2, 3 & 4 to

13    Amendment 1 to the SDLA.

14       **The Four 2006 Software Development Projects**

15       13.    In May 2006 MARVELL began discussions with INTELLIGRAPHICS

16    pertaining to two new projects – (a) the "Hourly Vista WLAN Driver Development" project

17    (hereinafter "Vista Project"); and (b) the "Hourly CCX v.4 Funk Supplicant Development"

18    project (hereinafter "CCX Project"), which was intended to upgrade the 802.11 Supplicant to be

19    compliant with CCX version 4.  MARVELL initially instructed INTELLIGRAPHICS that

20    MARVELL would assume the tasks of upgrading the driver and firmware modules to CCX v. 4

21    and that INTELLIGRAPHICS would only work on upgrading the Supplicant module.

22       14.    The parties documented the two new projects by creating Amendment 3 to the

23    SDLA along with Attachments 1 & 2 thereto, which became Exhibits L and M to the SDLA.

24    Paragraph 8(a) of Attachment 2 – entitled "PAYMENTS" – defines the "Development Fee" for

25    the Hourly CCXv4 Funk Supplicant Development Project as follows:

26

27       a.    **Development Fee**.  Intelligraphics will perform all services and develop all

28

COMPLAINT FOR BREACH OF CONTRACT; BREACH OF IMPLIED CONTRACT FRAUD IN THE
INDUCEMENT; DECLARATORY RELIEF – EQUITABLE ESTOPPEL; COPYRIGHT
INFRINGEMENT; AND QUANTUM MERUIT

1    Milestone Deliverables, including the Custom Software, described herein on a

2    time and materials basis at the rate of $135 U.S. Dollars per development man

3    hour, subject to Section 8(b) below.

4    15.    Additionally, subparagraph 8(b) of Attachment 2 (relating to the Hourly CCX v.4

5    Funk Supplicant Development Project) stated:

6    b.    All services provided by Intelligraphics under this Statement of Work (Exhibit M)

7    and the Statement of Work that is attached as Exhibit L to the Agreement

8    (concerning the Vista project), are subject to a cumulative cap of two-hundred and

9    fifty thousand U.S. Dollars (the "Payment Cap").   Unless otherwise mutually

10    agreed upon by the parties in writing, in no event shall the fees payable by

11    MARVELL to Intelligraphics exceed the Payment Cap for all and any services

12    rendered by Intelligraphics under this Statement of Work...."

13    16.    When INTELLIGRAPHICS suggested including in the payment provision of

14    these Attachments a specific clause confirming that INTELLIGRAPHICS would stop work on

15    these two projects – Hourly Vista WLAN Driver Development and Hourly CCX v.4 Funk

16    Supplicant Development – when the $250,000 had been spent, absent a renegotiation of the

17    payable amount, MARVELL represented that the above-quoted paragraphs already indicated that

18    this was the case, and that the proposed language was therefore unnecessary. MARVELL further

19    represented that it would pay for all of INTELLIGRAPHICS's work on a time and materials

20    basis and negotiate accordingly when and if the total Development Fees on these two projects

21    reached $250,000.

22    17.    Work began immediately on the Vista project, but for various reasons the project

23    only lasted for a short period of time.   Work did not begin on the CCX project immediately

24    because MARVELL had not finalized contract negotiations with Funk Software (now Juniper)

25    that would grant it (and INTELLIGRAPHICS) access to the Funk Supplicant source code.

26    18.    In the interim, MARVELL requested that INTELLIGRAPHICS immediately

27    begin work on a third new project, the Advanced Roaming Project ("Advanced Roaming" or

28

**COMPLAINT FOR BREACH OF CONTRACT; BREACH OF IMPLIED CONTRACT FRAUD IN THE INDUCEMENT; DECLARATORY RELIEF – EQUITABLE ESTOPPEL; COPYRIGHT INFRINGEMENT; AND QUANTUM MERUIT**

1    ARP). This involved rewriting software and firmware for the MARVELL wireless networking

2    cards to address what MARVELL had determined were new customer requirements for wireless

3    mobility in laptops and other mobile wireless devices. In this context the term 'roaming'

4    describes the software functions that are necessary to manage a wireless device that is moving

5    through a multiple Access Point environment, where the signal strength and usability of each

6    Access Point may quickly change as the device changes location relative to each Access Point.

7    By contrast, the original 802.11 roaming software (that portion having been developed by

8    MARVELL in the firmware) had minimal roaming support and used relatively primitive roaming

9    algorithms.

10        19.    The Advanced Roaming project as originally specified by MARVELL involved

11    INTELLIGRAPHICS only making modifications to the original 802.11 device driver code and

12    did not contemplate adding any CCX functionality to the driver or require any work on any

13    Supplicant modules. While detailed specifications for the Advanced Roaming Project were

14    created, no specific Scope of Work attachment to Addendum 3 for the project was ever created.

15    Importantly, at all times, both INTELLIGRAPHICS and MARVELL understood -- after the

16    three projects (Vista, ARP and CCX) had ultimately started in 2006 -- that it would be

17    impossible for INTELLIGRAPHICS to complete all of the  work listed in the specifications for

18    these three projects for anywhere near $250,000.

19        20.    Billing on the Vista Project and the Advanced Roaming Project started in June

20    2006.  MARVELL only paid after issuing its internal purchase orders for each project. It

21    originally issued a $50.000 purchase order, and then kept informing INTELLIGRAPHICS that

22    additional purchase orders were being run through the necessary internal approvals and would be

23    issued "shortly."  Amendment 3, and accompanying Attachments 1 and 2, for the Vista and CCX

24    projects respectively, were executed by Intelligraphics in early August.  Work on CCX version 4

25    started afterwards in mid August.

26

27

28

COMPLAINT FOR BREACH OF CONTRACT; BREACH OF IMPLIED CONTRACT FRAUD IN THE
INDUCEMENT; DECLARATORY RELIEF – EQUITABLE ESTOPPEL; COPYRIGHT
INFRINGEMENT; AND QUANTUM MERUIT

1    **<u>Change in the Scope of Work for both CCX and Advanced Roaming</u>**

2    　　21.    As described above, MARVELL had originally assigned INTELLIGRAPHICS to

3    work only on the Supplicant part of the CCX project, while MARVELL – which had its own

4    software development capability – would handle the driver and firmware modifications. After the

5    Advanced Roaming project started, however, MARVELL informed INTELLIGRAPHICS that it

6    wanted INTELLIGRAPHICS to take over the work on some of the CCX modifications to the

7    driver software as well. Specifically, it instructed INTELLIGRAPHICS to completely scrap the

8    Advanced Roaming design and all work completed thus far on the project and to redesign it from

9    scratch so that it included comprehensive support for both Advanced and CCX roaming. This

10   redesign was not completed until late August – well after the contract was signed by

11   INTELLIGRAPHICS.

12   　　22.    INTELLIGRAPHICS encountered problems with the driver portion of the project

13   almost immediately, because the MARVELL-created CCX version 1-4 code embedded in the

14   802.11 software was found to be defective, thus causing yet another significant increase in the

15   amount of work required for the now combined CCX Roaming project.  The amount of work

16   assigned to INTELLIGRAPHICS increased significantly after the execution of Amendment 3.

17   　　23.    In August 2006 INTELLIGRAPHICS was also asked by MARVELL to re-write

18   MARVELL 802.11 Windows-based software so that it could run in a VRTX environment on

19   Motorola's MIPS processor ("the Motorola Project").

20   　　24.    INTELLIGRAPHICS and MARVELL agreed that this work would be performed

21   on a time and materials basis, and INTELLIGRAPHICS began work on that basis. No contractual

22   addenda or amendments were executed for the Motorola Project. MARVELL issued purchase

23   orders in $20,000 increments and paid INTELLIGRAPHICS against those purchase orders.  In

24   December 2006 MARVELL contacted INTELLIGRAPHICS and unilaterally declared that the

25   work on the Motorola project could not exceed $100,000. As of that contact, INTELIGRAPHICS

26   had already performed approximately $ 80,000 of work on the project.

27   　　25.    INTELLIGRAPHICS informed MARVELL that it could not finish the project

28

**COMPLAINT FOR BREACH OF CONTRACT; BREACH OF IMPLIED CONTRACT FRAUD IN THE
INDUCEMENT; DECLARATORY RELIEF – EQUITABLE ESTOPPEL; COPYRIGHT
INFRINGEMENT; AND QUANTUM MERUIT**

1    under the arbitrary cap proposed by MARVELL, and would stop work if MARVELL refused to

2    pay for the work actually performed.  After discussing the estimated work needed to complete the

3    Motorola project, MARVELL informed INTELLIGRAPHICS that it would continue to pay on a

4    time and materials basis up to INTELLIGRAPHICS's estimated total of $126,000, and then

5    INTELLIGRAPHICS could stop work, pending additional negotiations for payment of the

6    remaining work necessary to complete the Motorola project software development.  Based on

7    these assurances, INTELLIGRAPHICS continued to perform work and turn over source code to

8    MARVELL as it was developed.  INTELLIGRAPHICS ultimately performed $122,273.98 in

9    work and expenses on the project. MARVELL, however, has refused to pay anything beyond the

10   $100,000.

11                          **Failure To Pay Development Fees Due and Owing**

12          26.     Based on its understanding that it was working on a 'time and materials' basis,

13   INTELLIGRAPHICS reported on and billed MARVELL for the VISTA, Advanced Roaming and

14   CCX projects all together.  When total development fees on a time and material basis on

15   INTELLIGRAPHICS' running bills for these projects began to approach $250,000, a

16   representative of INTELLIGRAPHICS contacted MARVELL management to secure

17   authorization to work beyond $250,000. MARVELL management asked INTELLIGRAPHICS to

18   continue work on the Advanced Roaming and CCX projects, now being worked on together by

19   INTELLIGRAPHICS, without waiting for the execution of a new amendment, and further

20   represented that MARVELL would continue to pay INTELLIGRAPHICS for all such work on a

21   time and materials basis, despite the fact that the total cost of the projects was going to exceed

22   $250,000.  Based on these representations, INTELLIGRAPHICS turned over a version of the

23   source code for the Advanced Roaming software, while continuing to work on the CCX

24   Supplicant project.

25          27.     Instead of fulfilling these promises, MARVELL subsequently refused to pay

26   beyond the $250,000 (and in fact only paid $201,555.88.) Marvell first took the position that

27   INTELLIGRAPHICS had no contract for the ARP, and therefore had no basis on which to collect

28
                                                                                              8
     **COMPLAINT FOR BREACH OF CONTRACT; BREACH OF IMPLIED CONTRACT FRAUD IN THE
     INDUCEMENT; DECLARATORY RELIEF – EQUITABLE ESTOPPEL; COPYRIGHT
     INFRINGEMENT; AND QUANTUM MERUIT**

1    for its work. It subsequently contended that the $250,000 amount applied not only to the entire

2    CCX project (CCX Advanced Roaming and the CCX Supplicant work), but to the earlier ARP

3    work as well. INTELLIGRAPHICS rejected these contentions, and refused to continue work on

4    the remaining portion of the CCX project, the Supplicant.  As of the date of this complaint being

5    filed, MARVELL has failed to pay the sum of over $362,000 for work duly performed by

6    INTELLIGRAPHICS.

7         28.    INTELLIGRAPHICS is informed and believes and based thereon alleges that

8    MARVELL is shipping the Advanced Roaming software (with embedded CCX features) to

9    MARVELL's customers as part of its wireless communications cards.  The amounts paid to date

10   for the Advanced Roaming invoices do not cover the amounts billed for the ARP project alone,

11   much less the full amount of work duly performed by INTELLIGRAPHICS at MARVELL's

12   request and based on MARVELL's assurances of payment.  Further, upon information and belief,

13   MARVELL has obtained (and continues to obtain) significant profit from such sales.  A material

14   portion of MARVELL's profit from these sales is reasonably attributable to

15   INTELLIGRAPHICS's copyrighted Advanced Roaming software.

16        29.    INTELLIGRAPHICS is informed and believes and based thereon alleges that

17   MARVELL is shipping the Motorola software as well to Motorola as part of its wireless

18   communications cards.  The amounts paid to date for the Motorola project custom software does

19   not fully pay the Development Fee for the Motorola project software that was created and

20   delivered by Intelligraphics based on MARVELL's assurances of payment.  Further, upon

21   information and belief, MARVELL has obtained (and continues to obtain) significant profit from

22   such sales.  A material portion of MARVELL's profit from these sales is reasonably attributable

23   to INTELLIGRAPHICS's copyrighted custom software created on the Motorola project.

24                          **FIRST CAUSE OF ACTION**

25                            **(Breach of Contract)**

26        29.    Plaintiff INTELLIGRAPHICS hereby refers to and incorporates paragraphs 1

27   through 28 as if set forth in full herein.

28   _____

9

1    30.    INTELLIGRAPHICS and MARVELL entered into an agreement for

2  INTELLIGRAPHICS to develop and deliver the Vista, Advanced Roaming and Hourly CCXv4

3  Funk Supplicant Development software and the Motorola project software, pursuant to the

4  specifications the parties adopted in connection therewith, and to be paid the Development Fees

5  for such work on a time and materials basis as set forth in Attachments 1 and 2 of Amendment 3.

6    31.    INTELLIGRAPHICS has performed all conditions, covenants, and promises

7  required to be performed in accordance with the agreement as to all work performed, except as

8  excused by MARVELL, up until the date when its obligation to continue software development

9  work pursuant to the Agreement was excused to by MARVELL's material breach thereof.

10    32.    MARVELL breached the contract by failing to pay over substantial sums in

11  Development Fees due and owing under the contract.

12    33.    As a result of MARVELL's breach of the contract, INTELLIGRAPHICS has

13  suffered damages in an amount to be proven at trial.

14  **SECOND CAUSE OF ACTION**

15  **(Breach of Implied Contract)**

16    34.    Plaintiff INTELLIGRAPHICS hereby refers to and incorporates paragraphs 1

17  through 33 as if set forth in full herein.

18    35.    The conduct of MARVELL and INTELLIGRAPHICS has manifested an implied

19  in fact contract between these parties.

20    36.    The terms of this implied in fact contract provided, among other things, for

21  MARVELL to pay INTELLIGRAPHICS for its software development work on the Advanced

22  Roaming software and the Motorola project in the same manner as the parties agreed that

23  MARVELL would pay INTELLIGRAPHICS for its software development work on the Hourly

24  Vista and Hourly CCX v.4 Funk Supplicant Development software pursuant to Attachments

25  1and 2 of Amendment 3.

26    37.    INTELLIGRAPHICS performed each and every of the obligations required of it

27  under said implied in fact contract as to all work performed up until the date when further

28

10

**COMPLAINT FOR BREACH OF CONTRACT; BREACH OF IMPLIED CONTRACT FRAUD IN THE INDUCEMENT; DECLARATORY RELIEF – EQUITABLE ESTOPPEL; COPYRIGHT INFRINGEMENT; AND QUANTUM MERUIT**

1    performance was excused by MARVELL's material breach thereof.

2        38.    MARVELL breached said implied in fact contract by failing to pay over

3    substantial sums in Development Fees properly billed by INTELLIGRAPHICS under that

4    contract.

5        39.    As a result of MARVELL's breach of the contract, INTELLIGRAPHICS has

6    suffered damages in an amount to be proven at trial.

7                        **THIRD CAUSE OF ACTION**

8                        **(Fraud In The Inducement)**

9        40.    Plaintiff INTELLIGRAPHICS hereby refers to and incorporates paragraphs 1

10   through 39 as if set forth in full herein.

11       41.    Upon information and belief, MARVELL intentionally made its promise to pay all

12   Development Fees earned on a time and material basis for development and delivery both the

13   Vista, Advanced Roaming and the Hourly CCX v.4 Funk Supplicant Development software, and

14   negotiate in good faith any additional contractual amendments necessary to facilitate such

15   payment – as is more fully set forth in paragraph 15 herein – without any intention to effect such

16   performance.

17       42.    Upon information and belief, MARVEL intentionally made its promise to pay all

18   Developmental Fees earned on a time and material basis for the development and delivery of the

19   custom software to be created in the Motorola project -- as is more fully set forth in paragraphs

20   23 through 25 herein – without any intention to perform, but instead with the intention of

21   arbitrarily and unilaterally choosing and enforcing a maximum $100,000 Development Fee for

22   the Motorola project in the future to wrongfully take advantage of the additional time and

23   materials cost of the software development without tendering the unconditionally promised

24   payment therefore.

25       43.    INTELLIGRAPHICS reasonably relied on these promises to enter into the SDLA,

26   Amendment 3 and the agreement to pay for the development of the Advanced Roaming software

27   and the Motorola project software on the same basis as set forth in Amendment 3 and to

28
                                                                                    11
        **COMPLAINT FOR BREACH OF CONTRACT; BREACH OF IMPLIED CONTRACT FRAUD IN THE
        INDUCEMENT; DECLARATORY RELIEF – EQUITABLE ESTOPPEL; COPYRIGHT
        INFRINGEMENT; AND QUANTUM MERUIT**

1   commence and continue to work on these software development projects in an effort to complete

2   them.  But for these promises, INTELLIGRAPHICS would not have entered into these

3   agreements nor commenced or continued development work on the Advanced Roaming

4   software.

5       44.     Upon information and belief, MARVELL's true intention at the time it made the

6   promises and representations set forth in paragraph 15 above was to attempt to avoid payment for

7   any work on the Vista, Advanced Roaming or CCX software development after

8   INTELLIGRAPHICS had billed a total of $250,000.  In fact MARVELL only paid $201,555.88

9   for work performed on a time and materials basis on the Vista, Advanced Roaming and CCX

10  development and nonetheless demanded completion and delivery of such software by

11  INTELLIGRAPHICS despite this refusal to pay for the remainder of the software development

12  effort.

13      45.     Upon information and belief, MARVELL's true intention at the time it made the

14  promises and representation set forth in paragraphs 23, 24 and 25 above was to attempt to avoid

15  for payment of a substantial portion of INTELLIGRAPHICS's work on the software created

16  during the Motorola project and to demand delivery of such software by INTELLIGRAPHICS

17  despite its refusal to pay for the remainder of that software development effort.

18      46.     INTELLIGRAPHICS was damaged by MARVELL's fraud in an amount to be

19  proven at trial.

20      47.     MARVELL's conduct was willful, despicable and fraudulent, and punitive

21  damages should be awarded to INTELLIGRAPHICS.

22                  **FOURTH CAUSE OF ACTION**

23                      **(Fraud)**

24      48.     Plaintiff INTELLIGRAPHICS hereby refers to and incorporates paragraphs

25  through 47 as if set forth in full herein.

26      49.     Upon information and belief, MARVELL intentionally made its promise to pay all

27  Development Fees earned on a time and material basis for development and delivery of both the

28                                                                          12
     **COMPLAINT FOR BREACH OF CONTRACT; BREACH OF IMPLIED CONTRACT FRAUD IN THE
     INDUCEMENT; DECLARATORY RELIEF – EQUITABLE ESTOPPEL; COPYRIGHT
     INFRINGEMENT; AND QUANTUM MERUIT**

1   Advanced Roaming and the Cisco CCX v.4 Funk Supplicant Development software – made after

2   INTELLIGRAPHICS's proper Development Fee billings under all of the software development

3   projects identified herein reached $250,000 (as is more fully set forth in paragraph 22 herein)

4   without any intention to perform.

5          50.     Upon information and belief, MARVELL intentionally made its promise to pay all

6   Development Fees earned on a time and material basis for development and delivery of the

7   Motorola project software – made after MARVELL had initially attempted to invoke and enforce

8   a unilateral $100,000 limit on total payments for INTELLIGRAPHICS's Motorola project

9   software development and then backed down to again promise to pay all Development Fees

10  based on time and material costs up to INTELLIGRAPHICS's estimate of $125,000, whereafter

11  the parties would negotiate regarding additional compensation to INTELLIGRAPHICS for

12  INTELLIGRAPHICS to finish the work.

13         51.     INTELLIGRAPHICS reasonably relied on these promises to continue to work on

14  these software development projects in an effort to complete them.  But for these promises,

15  INTELLIGRAPHICS would not have continued development work on the Advanced Roaming

16  software, the CCX v.4 Fund Supplicant Development software or the Motorola software

17  development project.

18         52.     Upon information and belief, MARVELL's true intention, at the time it made the

19  promises and representations set forth in paragraphs 14 through 16 above, was to attempt to

20  avoid payment for any work on this software development after INTELLIGRAPHICS had billed

21  a total of $250,000 for work performed on a time and materials basis, and demand completion

22  and delivery of such software by INTELLIGRAPHICS despite its refusal to pay for the

23  remainder of software development effort.

24         53.     Upon information and belief, MARVELL's true intention, at the time it made the

25  promises and representations set forth in paragraphs 23 through 25 above, was to attempt to

26  avoid payment for any work on the Motorola project software development after

27  INTELLIGRAPHICS had billed a total of $100,000 for work performed on a time and materials

28

                                                                                        13

**COMPLAINT FOR BREACH OF CONTRACT; BREACH OF IMPLIED CONTRACT FRAUD IN THE
INDUCEMENT; DECLARATORY RELIEF – EQUITABLE ESTOPPEL; COPYRIGHT
INFRINGEMENT; AND QUANTUM MERUIT**

1    basis, and demand completion and delivery of such software by INTELLIGRAPHICS despite its

2    refusal to pay for the remainder of the software development effort.

3         54.     INTELLIGRAPHICS was damaged by MARVELL's fraud in an amount to be

4    proven at trial.

5         55.     MARVELL's conduct was willful, despicable and fraudulent, and punitive

6    damages should be awarded to INTELLIGRAPHICS.

7    **FIFTH CAUSE OF ACTION**

8    **(Declaratory Relief – Equitable Estoppel)**

9         56.     Plaintiff INTELLIGRAPHICS hereby refers to and incorporates paragraphs

10    through 55 as if set forth in full herein.

11         57.     MARVELL repeatedly represented that it would continue to pay for

12    INTELLIGRAPHICS' software development work as described herein with knowledge that it

13    would not in fact do so.

14         58.     INTELLIGRAPHICS had no knowledge that MARVELL would not pay for

15    INTELLIGRAPHICS' software development work as MARVELL represented.

16         59.     When making these representations, MARVELL intended that

17    INTELLIGRAPHICS would continue all software development work as described herein and

18    continue to incur costs for the employment of its computer programmers, management and staff,

19    and all related hardware and related overhead expenses, for the development of this software.

20         60.     INTELLIGRAPHICS reasonably relied on these representations and was induced

21    thereby to undertake, and did undertake, continuing software development work as described

22    herein, incurring significant costs and expenses related thereto.

23         61.     An actual and justifiable controversy exists between Plaintiff and Defendant.

24    Plaintiff INTELLIGRAPHICS contends that based on the allegations set forth herein, this Court

25    should issue a declaratory judgment that Defendant MARVELL is estopped from pursuing any

26    defense to INTELLIGRAPHICS' claims for damages for breach of contract, breach of implied

27    contract or quantum meruit herein based upon any allegation that the parties agreed that

28    14

**COMPLAINT FOR BREACH OF CONTRACT; BREACH OF IMPLIED CONTRACT FRAUD IN THE INDUCEMENT; DECLARATORY RELIEF – EQUITABLE ESTOPPEL; COPYRIGHT INFRINGEMENT; AND QUANTUM MERUIT**

1    INTELLIGRAPHICS was obligated to fully develop the Vista, Advanced Roaming, CCX and

2    Motorola project software described herein, and to deliver completed object modules related

3    thereto, for a total payment of no more than $250,000 for the Vista, Advanced Roaming and

4    CCX projects and no more than $100,000 on the Motorola software development project.

5        62.    For its part, upon information and belief, Defendant MARVELL contends that it

6    should be permitted to defend INTELLIGRAPHICS's breach of contract and breach of implied

7    contract claims by asserting that INTELLIGRAPHICS is required to complete all Vista,

8    Advanced Roaming and CCX software development for a total payment of no more than

9    $250,000 and all Motorola project software development for no more than $100,000.

10        63.    A judicial determination is necessary and appropriate in order to determine the

11    parties' rights and obligations concerning the requested application of equitable estoppel as set

12    forth herein.

13    **SIXTH CAUSE OF ACTION**

14    **(Copyright Infringement under 17 U.S.C. §§ 101 *et. seq.*)**

15        64.    Plaintiff INTELLIGRAPHICS hereby refers to and incorporates paragraphs

16    through 63 as if set forth in full herein.

17        65.    Defendant MARVELL's acts in incorporating Plaintiff INTELLIGRAPHICS's

18    copyrighted Advanced Roaming Software and its Motorola development project software into its

19    microchips and marketing and selling these microchips (with INTELLIGRAPHICS's copyrighted

20    Advanced Roaming and Motorola project software incorporated therein) without making the

21    payment of all Development Fees incurred for such work on a time and materials basis necessary

22    to the effective purchase of INTELLIGRAPHICS's intellectual property rights with regard to

23    such software – constitute infringement of INTELLIGRAPHICS's copyrights.

24        66.    INTELLIGRAPHICS is informed and believes, and on such basis alleges, that

25    Defendant MARVELL's infringement of INTELLIGRAPHICS' copyrights in its Advanced

26    Roaming and Motorola project software was deliberate, willful, malicious, oppressive, and

27    without regard to INTELLIGRAPHICS' proprietary rights.

28

**COMPLAINT FOR BREACH OF CONTRACT; BREACH OF IMPLIED CONTRACT FRAUD IN THE INDUCEMENT; DECLARATORY RELIEF – EQUITABLE ESTOPPEL; COPYRIGHT INFRINGEMENT; AND QUANTUM MERUIT**

1    67.    Defendant MARVELL's copyright infringement has caused, and will continue to

2    cause INTELLIGRAPHICS to suffer substantial injuries, loss and damage to its proprietary and

3    exclusive rights to the Advanced Roaming and Motorola project software, and has further

4    damaged INTELLIGRAPHICS's business, reputation and good will, diverted its trade and

5    caused a loss of profits, all in an amount not yet ascertained, which amount is to be proven at

6    trial.

7    68.    Defendant MARVELL's copyright infringement, and the threat of continuing

8    infringement, has caused, and will cause, INTELLIGRAPHICS repeated and irreparable injury.

9    It is difficult to ascertain the amount of money damages that would afford INTELLIGRAPHICS

10   complete and adequate relief at law for Defendant's continuing acts.    INTELLIGRAPHICS

11   remedy at law is not adequate to compensate it for the injuries already inflicted and further

12   threatened by Defendant MARVELL.  Therefore, Defendant MARVELL should be restrained

13   and enjoined pursuant to the Copyright Act for any further acts constituting an infringement of

14   INTELLIGRAPHICS's copyrighted software as described herein pursuant to the Copyright Act,

15   17 U.S.C. §§ 502.

## SEVENTH CAUSE OF ACTION

### (Quantum Meruit)

18   69.    Plaintiff INTELLIGRAPHICS hereby refers to and incorporates paragraphs

19   through 68 as if set forth in full herein.

20   70.    As alleged herein, Plaintiff INTELLIGRAPHICS has performed work for

21   Defendant MARVELL which has benefited Defendant and which all parties expected

22   Defendants to pay for, in an amount to be proven at trial.

23   WHEREFORE, Plaintiff INTELLIGRAPHICS prays that this Court enter judgment in its

24   favor on its causes of action set forth above and award it relief including, but not limited to, the

25   following:

26   A.    The Court's issuance of an injunction preliminarily and permanently enjoining and

27   restraining Defendant MARVELL and its respective affiliates, officers, directors, employees,

28

16

**COMPLAINT FOR BREACH OF CONTRACT; BREACH OF IMPLIED CONTRACT FRAUD IN THE INDUCEMENT; DECLARATORY RELIEF – EQUITABLE ESTOPPEL; COPYRIGHT INFRINGEMENT; AND QUANTUM MERUIT**

1   agents, servants, representatives, successors and assigns, and all persons in active concert or

2   participation with or affiliated with Defendant, from:

3       (1)  Marketing, selling or distributing any microchips which incorporate any part of the

4             Advanced Roaming or Motorola project software developed by

5             INTELLIGRAPHICS as set forth herein;

6       (2) Otherwise infringing on any of INTELLIGRAPHICS's copyrights.

7       B.     Awarding INTELLIGRAPHICS for Defendant MARVELL's copyright

8   infringement either: (1) actual damages in an amount to be determined at trial; or (2) statutory

9   damages for each act of infringement in an amount provided by law, as set forth in 17 U.S.C.

10   §504, at INTELLIGRAPHICS's election before the entry of a final judgment.

11       C.     The Court's issuance of an order requiring Defendant MARVELL to file with this

12   Court and serve on INTELLIGRAPHICS within 30 days after service of the injunction described

13   above a report, in writing, under oath, setting forth in detail the manner and form in which

14   Defendant has complied with the injunction;

15       D.     The Court's issuance of an order that MARVELL destroy all microchips into

16   which MARVELL has incorporated any of INTELLIGRAPHICS's software, including but not

17   limited to its Advanced Roaming Software and its Motorola project software, and which have not

18   been sold to third parties not including any of MARVELL's respective affiliates, officers,

19   directors, employees, agents, servants, representatives, successors and assigns, or any persons in

20   active concert or participation with or affiliated with Defendant MARVELL, pursuant to 15

21   U.S.C. § 1118;

22       E.     Awarding INTELLIGRAPHICS monetary relief, including damages sustained by

23   INTELLIGRAPHICS in an amount not yet determined, and the costs of the copyright action,

24   including attorneys fees, pursuant to 15 U.S.C. § 1117(a);

25       F.     The Court's issuance of an order that Defendant MARVELL disgorge all profits

26   obtained from its wrongful use of INTELLIGRAPHICS's copyrighted software, including but

27   not limited to its Advanced Roaming and Motorola project software, pursuant to 15 U.S.C. §

28

**COMPLAINT FOR BREACH OF CONTRACT; BREACH OF IMPLIED CONTRACT FRAUD IN THE INDUCEMENT; DECLARATORY RELIEF – EQUITABLE ESTOPPEL; COPYRIGHT INFRINGEMENT; AND QUANTUM MERUIT**

1   1117(a);

2       G.      On its other claims, awarding INTELLIGRAPHICS compensatory damages

3   according to proof;

4       H.      Awarding INTELLIGRAPHICS punitive damages;

5       I.      Issuing a declaration that Defendant MARVELL is estopped from pursuing any

6   defense to INTELLIGRAPHICS's claims for damages for breach of contract or breach of implied

7   contract herein based upon any allegation that the parties agreed that INTELLIGRAPHICS was

8   obligated to fully develop the Advanced Roaming and Hourly CCX v.4 Funk Supplicant

9   Development software described herein, and deliver completed object modules related thereto,

10  for a total payment of no more than $250,000, and fully develop the Motorola project software

11  described herein, and deliver completed object modules related thereto, for a total payment of no

12  more than $100,000.

13      J.      For such other and further relief as the Court may deem just and proper.

14

15  DATED:          May 9, 2007                     SOMMERS & SCHWARTZ LLP

16

17

18                                                  _____
                                                    Andrew Schwartz, Attorney for Plaintiff
                                                    Intelligraphics, Inc.
19
    s:\intelligraphics\complaint\Complaint.doc
20

21

22

23

24

25

26

27

28
                                                                                          18
    **COMPLAINT FOR BREACH OF CONTRACT; BREACH OF IMPLIED CONTRACT FRAUD IN THE
    INDUCEMENT; DECLARATORY RELIEF – EQUITABLE ESTOPPEL; COPYRIGHT
    INFRINGEMENT; AND QUANTUM MERUIT**