Andrew Schwartz (State Bar No. 100210)
Frank Sommers (State Bar No. 109012)
**SOMMERS & SCHWARTZ LLP**
550 California Street
Sacramento Tower, Suite 700
San Francisco, CA 94104
Telephone: (415) 955-0925
Facsimile: (415) 955-0927

Attorneys for Plaintiff Intelligraphics, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTELLIGRAPHICS, INC<br><br>           Plaintiff,<br><br>vs.<br><br>MARVELL SEMICONDUCTOR, INC.<br><br>           Defendants. | Case No. **C 07 2499**<br><br>**FIRST AMENDED COMPLAINT FOR BREACH OF CONTRACT; BREACH OF IMPLIED CONTRACT FRAUD IN THE INDUCEMENT; DECLARATORY RELIEF -- EQUITABLE ESTOPPEL; COPYRIGHT INFRINGEMENT; AND QUANTUM MERUIT** |

Plaintiff INTELLIGRAPHICS, INC. ("INTELLIGRAPHICS") by its undersigned attorneys alleges as follows:

**THE PARTIES**

1. INTELLIGRAPHICS is a Texas corporation with its principal place of business at 1401 North Central Expressway, Suite 320, Richardson, Texas 75080.

2. MARVELL SEMICONDUCTOR, INC. ("MARVELL") is a California Corporation with its principal place of business located at 5488 Marvell Lane Santa Clara, CA 95054.

**JURISDICTION AND VENUE**

3. This Court has subject matter jurisdiction over the Sixth Cause of Action herein (Copyright Infringement) 17 U.S.C. § 501 and 28 U.S.C. §§ 1331 and 1338(a) in that the claims

arise under the laws of the United States. This Court has subject matter jurisdiction over the First, Second, Third, Fourth, Fifth and Seventh Causes of Action pursuant to 28 U.S.C. § 1332(a) in that the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs and is between citizens of different States. In addition, this court has subject matter jurisdiction over the First, Second, Third, Fourth, Fifth and Seventh Causes of Action pursuant to 28 U.S.C. § 1367 (a) and the principles of supplemental jurisdiction.

4.      Venue is proper in the Northern District of California under 28 U.S.C. §§ 1391 (b) and (c) and 1400 (a) because Defendant is subject to personal jurisdiction in this state since Defendants have purposefully availed themselves of the privilege of conducting business in this District, the claims arise from Defendants forum-related activities, a substantial part of the events giving rise to Plaintiff's claims occurred, or should be deemed to have occurred, within this judicial district and the exercise of jurisdiction is reasonable, given that the Software Development and Licensing Agreement at issue herein states that: "Any legal action arising under this Agreement will be brought solely in the federal courts of the Northern District of California and any state courts located therein, and both parties due (sic) hereby irrevocably consent to the exclusive jurisdiction and venue of such courts."

**NATURE OF THE CASE**

5.      Defendant MARVELL produces microchips for use in computer processors. In 2003, MARVELL engaged with INTELLIGRAPHICS to provide driver software for its new 802.11 wireless networking chip product.

6.      Plaintiff INTELLIGRAPHICS is a company that develops and licenses specialized and customized device driver and system level software. INTELLIGRAPHICS had existing 802.11 wireless networking driver software and the ability to customize and extend that software so that it met with Defendant MARVELL's requirements.

**Initial Contract Negotiations & First Project**

7.      The parties hereto entered into a "SOFTWARE DEVELOPMENT AND LICENSE AGREEMENT" ("the SDLA") in July 2003. The SDLA set out the terms that

2
**COMPLAINT FOR BREACH OF CONTRACT; BREACH OF IMPLIED CONTRACT FRAUD IN THE INDUCEMENT; DECLARATORY RELIEF – EQUITABLE ESTOPPEL; COPYRIGHT INFRINGEMENT; AND QUANTUM MERUIT**

governed the licensing and customization of the 802.11 drivers and related custom software that were to be provided to MARVELL. The contract was set up such that the price to be paid for the work on each piece of "Custom Software" developed thereunder was to be set out in a "Development Schedule with Milestone Deliverables" for each individual "Custom Software" project. The "Development Fee" for each piece of software was defined as the total of all related "Milestone" payments. Exhibit C to the contract set out a series of Milestone Deliverables, each associated with a fixed fee. The contract then declared that <u>only</u> when a specific Milestone Deliverable for a specific software project was delivered by INTELLIGRAPHICS and accepted by MARVELL, per a Statement of Acceptance – and INTELLIGRAPHICS received payment in full for that Milestone Deliverable by MARVELL – were the intellectual property rights to that specific Milestone Deliverable transferred from INTELLIGRAPHICS to MARVELL.

8. The intellectual property provisions of the SDLA first granted MARVELL a non-exclusive provisional license to INTELLIGRAPHICS's existing Basic 802.11-related modules (The "Base Code") which would ultimately be incorporated into the final product being created for MARVELL (*see* SDLA ¶ 1.3) . The Base Code license was necessitated by MARVELL's need to properly test and inspect the software and to evaluate the actual performance of the software prior to acceptance.

9. The SDLA then provided that the individual pieces of Custom Software developed under each Scope of Work would be the property of INTELLIGRAPHICS until it received payment for the completed Milestone Deliverables from MARVELL -- an event that would occur only after INTELLIGRAPHICS completed the development of and delivered specific Milestone Deliverables of the Custom Software and MARVELL approved and accepted them. Specifically, the SDLA provided that – in a paragraph entitled "Ownership by MARVELL of the Custom Software" – "At such time as MARVELL has paid the applicable Development Fee for each Milestone Deliverable delivered by Intelligraphics and accepted by MARVELL, then MARVELL shall assume ownership of such Milestone Deliverable and all Intellectual Property Rights Therein."

10. INTELLIGRAPHICS completed the 802.11 project in 2003 and MARVELL accepted and paid for it.

11. By the time the parties began developing the more recent "Scope of Work" Attachments to the 2003 Agreement, the parties had changed their definition of "Development Fee" to be based on a "time and materials" billing, rather than fixed fee. This new definition of the Development Fee for these projects was specifically incorporated into individual Amendments (with attendant SOW Attachments for the new projects for which such documents were created).

12. Between 2003 and 2005, INTELLIGRAPHICS performed three additional projects for MARVELL, one, the "Soft AP-Security Project," was performed on an hourly basis and was not documented in any Amendments or Attachments to the contract. The second, the "QoS Project," was started in 2004 and was the subject of Attachments 1, 2, 3 & 4 to Amendment 1 to the SDLA.

**The Four 2006 Software Development Projects**

13. In May 2006 MARVELL began discussions with INTELLIGRAPHICS pertaining to two new projects – (a) the "Hourly Vista WLAN Driver Development" project (hereinafter "Vista Project"); and (b) the "Hourly CCX v.4 Funk Supplicant Development" project (hereinafter "CCX Project"), which was intended to upgrade the 802.11 Supplicant to be compliant with CCX version 4. MARVELL initially instructed INTELLIGRAPHICS that MARVELL would assume the tasks of upgrading the driver and firmware modules to CCX v. 4 and that INTELLIGRAPHICS would only work on upgrading the Supplicant module.

14. The parties documented the two new projects by creating Amendment 3 to the SDLA along with Attachments 1 & 2 thereto, which became Exhibits L and M to the SDLA. Paragraph 8(a) of Attachment 2 – entitled "PAYMENTS" – defines the "Development Fee" for the Hourly CCXv4 Funk Supplicant Development Project as follows:

    a.    **Development Fee**. Intelligraphics will perform all services and develop all

        Milestone Deliverables, including the Custom Software, described herein on a time and materials basis at the rate of $135 U.S. Dollars per development man hour, subject to Section 8(b) below.

15. Additionally, subparagraph 8(b) of Attachment 2 (relating to the Hourly CCX v.4 Funk Supplicant Development Project) stated:

    b. All services provided by Intelligraphics under this Statement of Work (Exhibit M) and the Statement of Work that is attached as Exhibit L to the Agreement (concerning the Vista project), are subject to a cumulative cap of two-hundred and fifty thousand U.S. Dollars (the "Payment Cap"). Unless otherwise mutually agreed upon by the parties in writing, in no event shall the fees payable by MARVELL to Intelligraphics exceed the Payment Cap for all and any services rendered by Intelligraphics under this Statement of Work...."

16. When INTELLIGRAPHICS suggested including in the payment provision of these Attachments a specific clause confirming that INTELLIGRAPHICS would stop work on these two projects – Hourly Vista WLAN Driver Development and Hourly CCX v.4 Funk Supplicant Development – when the $250,000 had been spent, absent a renegotiation of the payable amount, MARVELL, in the person of Carey LeRoy represented during a phone conversation while the contract addendum was being negotiated that the above-quoted paragraphs already indicated that this was the case, and that the proposed language was therefore unnecessary. MARVELL further represented that it would pay for all of INTELLIGRAPHICS's work on a time and materials basis and negotiate accordingly when and if the total Development Fees on these two projects reached $250,000.

17. Work began immediately on the Vista project, but for various reasons the project only lasted for a short period of time. Work did not begin on the CCX project immediately because MARVELL had not finalized contract negotiations with Funk Software (now Juniper) that would grant it (and INTELLIGRAPHICS) access to the Funk Supplicant source code.

18. In the interim, MARVELL requested that INTELLIGRAPHICS immediately

begin work on a third new project, the Advanced Roaming Project ("Advanced Roaming" or ARP). This involved rewriting software and firmware for the MARVELL wireless networking cards to address what MARVELL had determined were new customer requirements for wireless mobility in laptops and other mobile wireless devices. In this context the term 'roaming' describes the software functions that are necessary to manage a wireless device that is moving through a multiple Access Point environment, where the signal strength and usability of each Access Point may quickly change as the device changes location relative to each Access Point. By contrast, the original 802.11 roaming software (that portion having been developed by MARVELL in the firmware) had minimal roaming support and used relatively primitive roaming algorithms.

19.    The Advanced Roaming project as originally specified by MARVELL involved INTELLIGRAPHICS only making modifications to the original 802.11 device driver code and did not contemplate adding any CCX functionality to the driver or require any work on any Supplicant modules. While detailed specifications for the Advanced Roaming Project were created, no specific Scope of Work attachment to Addendum 3 for the project was ever created. Importantly, at all times, both INTELLIGRAPHICS and MARVELL understood --  after the three projects (Vista, ARP and CCX) had ultimately started in 2006 -- that it would be impossible for INTELLIGRAPHICS to complete all of the work listed in the specifications for these three projects for anywhere near $250,000.

20.    Billing on the Vista Project and the Advanced Roaming Project started in June 2006.  MARVELL only paid after issuing its internal purchase orders for each project. It originally issued a $50.000 purchase order, and then kept informing INTELLIGRAPHICS that additional purchase orders were being run through the necessary internal approvals and would be issued "shortly."  Amendment 3, and accompanying Attachments 1 and 2, for the Vista and CCX projects respectively, were executed by Intelligraphics in early August.  Work on CCX version 4 started afterwards in mid August.

**COMPLAINT FOR BREACH OF CONTRACT; BREACH OF IMPLIED CONTRACT FRAUD IN THE INDUCEMENT; DECLARATORY RELIEF – EQUITABLE ESTOPPEL; COPYRIGHT INFRINGEMENT; AND QUANTUM MERUIT**

**Change in the Scope of Work for both CCX and Advanced Roaming**

21.     As described above, MARVELL had originally assigned INTELLIGRAPHICS to work only on the Supplicant part of the CCX project, while MARVELL – which had its own software development capability – would handle the driver and firmware modifications. After the Advanced Roaming project started, however, MARVELL informed INTELLIGRAPHICS that it wanted INTELLIGRAPHICS to take over the work on some of the CCX modifications to the driver software as well. Specifically, it instructed INTELLIGRAPHICS to completely scrap the Advanced Roaming design and all work completed thus far on the project and to redesign it from scratch so that it included comprehensive support for both Advanced and CCX roaming. This redesign was not completed until late August – well after the contract was signed by INTELLIGRAPHICS.

22.     INTELLIGRAPHICS encountered problems with the driver portion of the project almost immediately, because the MARVELL-created CCX version 1-4 code embedded in the 802.11 software was found to be defective, thus causing yet another significant increase in the amount of work required for the now combined CCX Roaming project.  The amount of work assigned to INTELLIGRAPHICS increased significantly after the execution of Amendment 3.

23.     In August 2006 INTELLIGRAPHICS was also asked by MARVELL to re-write MARVELL 802.11 Windows-based software so that it could run in a VRTX environment on Motorola's MIPS processor ("the Motorola Project").

24.     INTELLIGRAPHICS and MARVELL agreed that this work would be performed on a time and materials basis, and INTELLIGRAPHICS began work on that basis. No contractual addenda or amendments were executed for the Motorola Project. MARVELL issued purchase orders in $20,000 increments and paid INTELLIGRAPHICS against those purchase orders.  In December 2006 MARVELL through Mahesh Venkantramin and Bart Giordano contacted INTELLIGRAPHICS and orally declared that the work on the Motorola project could not exceed $100,000. As of that contact, INTELIGRAPHICS had already performed

approximately $ 80,000 of work on the project.

25.     INTELLIGRAPHICS informed MARVELL that it could not finish the project under the arbitrary cap proposed by MARVELL, and would stop work if MARVELL refused to pay for the work actually performed.  After discussing the estimated work needed to complete the Motorola project, MARVELL through Alan Cunningham both orally in January and February 2007 and via email on January 22, 2007 informed INTELLIGRAPHICS that it would continue to pay on a time and materials basis up to INTELLIGRAPHICS's estimated total of $126,000, and then INTELLIGRAPHICS could stop work, pending additional negotiations for payment of the remaining work necessary to complete the Motorola project software development.  Based on these assurances, INTELLIGRAPHICS continued to perform work and turn over source code to MARVELL as it was developed.  INTELLIGRAPHICS ultimately performed $122,273.98 in work and expenses on the project. MARVELL, however, has refused to pay anything beyond the $100,000.

**Failure To Pay Development Fees Due and Owing**

26.     Based on its understanding that it was working on a 'time and materials' basis, INTELLIGRAPHICS reported on and billed MARVELL for the VISTA, Advanced Roaming and CCX projects all together.  When total development fees on a time and material basis on INTELLIGRAPHICS' running bills for these projects began to approach $250,000, a representative of INTELLIGRAPHICS contacted MARVELL management to secure authorization to work beyond $250,000. MARVELL management representative Bart Giordano in December 2006 orally asked INTELLIGRAPHICS to continue work on the Advanced Roaming and CCX projects, now being worked on together by INTELLIGRAPHICS, without waiting for the execution of a new amendment, and further represented that MARVELL would continue to pay INTELLIGRAPHICS for all such work on a time and materials basis, despite the fact that the total cost of the projects was going to exceed $250,000.  Based on these representations, INTELLIGRAPHICS turned over a version of the source code for the Advanced Roaming software, while continuing to work on the CCX Supplicant project.

27. Instead of fulfilling these promises, MARVELL through Sameer Bindinchani in a meeting at Marvell in March 2007 subsequently refused to pay beyond the $250,000 (and in fact only paid $201,555.88.) Marvell first took the position that INTELLIGRAPHICS had no contract for the ARP, and therefore had no basis on which to collect for its work. It subsequently contended through its counsel that the $250,000 amount applied not only to the entire CCX project (CCX Advanced Roaming and the CCX Supplicant work), but to the earlier ARP work as well. INTELLIGRAPHICS rejected these contentions, and refused to continue work on the remaining portion of the CCX project, the Supplicant.  As of the date of this complaint being filed, MARVELL has failed to pay the sum of over $362,000 for work duly performed by INTELLIGRAPHICS.

28. INTELLIGRAPHICS is informed and believes and based thereon alleges that MARVELL is shipping the Advanced Roaming software (with embedded CCX features) to MARVELL's customers as part of its wireless communications cards.  The amounts paid to date for the Advanced Roaming invoices do not cover the amounts billed for the ARP project alone, much less the full amount of work duly performed by INTELLIGRAPHICS at MARVELL's request and based on MARVELL's assurances of payment.  Further, upon information and belief, MARVELL has obtained (and continues to obtain) significant profit from such sales.  A material portion of MARVELL's profit from these sales is reasonably attributable to INTELLIGRAPHICS's copyrighted Advanced Roaming software.

29. INTELLIGRAPHICS is informed and believes and based thereon alleges that MARVELL is shipping the Motorola software as well to Motorola as part of its wireless communications cards.  The amounts paid to date for the Motorola project custom software does not fully pay the Development Fee for the Motorola project software that was created and delivered by Intelligraphics based on MARVELL's assurances of payment.  Further, upon information and belief, MARVELL has obtained (and continues to obtain) significant profit from such sales.  A material portion of MARVELL's profit from these sales is reasonably attributable to INTELLIGRAPHICS's copyrighted custom software created on the Motorola project.

**COMPLAINT FOR BREACH OF CONTRACT; BREACH OF IMPLIED CONTRACT FRAUD IN THE INDUCEMENT; DECLARATORY RELIEF – EQUITABLE ESTOPPEL; COPYRIGHT INFRINGEMENT; AND QUANTUM MERUIT**

30. INTELLIGRAPHICS has registered copyrights in the Motorola Project VRTX Ported 802.11 Driver code, and has complied in all respects with the Copyright Act, 17 U.S.C. §§ 101 *et seq.,* and has received Certificate Number TXu1-346-073, dated March 21, 2007 for such software. INTELLIGRAPHICS has also registered copyrights in the Advanced Roaming Software, registered under Certificate TXu1-347-641 dated March 16, 2007. The material covered by such registration is all original work of INTELLIGRAPHICS and is subject to copyright protection under the laws of the United States.

31. At all relevant times INTELLIGRAPHICS has complied in all respects with the Copyright Act, 17 U.S.C. §§ 101 *et seq.* to secure exclusive rights and privileges in and to the copyrights in the versions of the software referred to above, and in their constituent programs. In this regard, INTELLIGRAPHICS is the owner of all rights, title and interest to the federal copyright registrations described above.

**FIRST CAUSE OF ACTION**

**(Breach of Contract)**

32. Plaintiff INTELLIGRAPHICS hereby refers to and incorporates paragraphs 1 through 31 as if set forth in full herein.

33. INTELLIGRAPHICS and MARVELL entered into an agreement for INTELLIGRAPHICS to develop and deliver the Vista, Advanced Roaming and Hourly CCXv4 Funk Supplicant Development software and the Motorola project software, pursuant to the specifications the parties adopted in connection therewith, and to be paid the Development Fees for such work on a time and materials basis as set forth in Attachments 1 and 2 of Amendment 3.

34. INTELLIGRAPHICS has performed all conditions, covenants, and promises required to be performed in accordance with the agreement as to all work performed, except as excused by MARVELL, up until the date when its obligation to continue software development work pursuant to the Agreement was excused to by MARVELL's material breach thereof.

35. MARVELL breached the contract by failing to pay over substantial sums in Development Fees due and owing under the contract.

36. As a result of MARVELL's breach of the contract, INTELLIGRAPHICS has suffered damages in an amount to be proven at trial.

## SECOND CAUSE OF ACTION
### (Breach of Implied Contract)

37. Plaintiff INTELLIGRAPHICS hereby refers to and incorporates paragraphs 1 through 31 as if set forth in full herein.

38. The conduct of MARVELL and INTELLIGRAPHICS has manifested an implied in fact contract between these parties.

39. The terms of this implied in fact contract provided, among other things, for MARVELL to pay INTELLIGRAPHICS for its software development work on the Advanced Roaming software and the Motorola project in the same manner as the parties agreed that MARVELL would pay INTELLIGRAPHICS for its software development work on the Hourly Vista and Hourly CCX v.4 Funk Supplicant Development software pursuant to Attachments 1and 2 of Amendment 3.

40. INTELLIGRAPHICS performed each and every of the obligations required of it under said implied in fact contract as to all work performed up until the date when further performance was excused by MARVELL's material breach thereof.

41. MARVELL breached said implied in fact contract by failing to pay over substantial sums in Development Fees properly billed by INTELLIGRAPHICS under that contract.

42. As a result of MARVELL's breach of the contract, INTELLIGRAPHICS has suffered damages in an amount to be proven at trial.

## THIRD CAUSE OF ACTION
### (Fraud In The Inducement)

43. Plaintiff INTELLIGRAPHICS hereby refers to and incorporates paragraphs 1 through 31 as if set forth in full herein.

44. Upon information and belief, MARVELL intentionally made its promise to pay

1   all Development Fees earned on a time and material basis for development and delivery both the
2   Vista, Advanced Roaming and the Hourly CCX v.4 Funk Supplicant Development software, and
3   negotiate in good faith any additional contractual amendments necessary to facilitate such
4   payment – as is more fully set forth in paragraph 15 herein – without any intention to effect such
5   performance.
6         45.    Upon information and belief, MARVEL intentionally made its promise to pay all
7   Developmental Fees earned on a time and material basis for the development and delivery of the
8   custom software to be created in the Motorola project --  as is more fully set forth in paragraphs
9   23 through 25 herein – without any intention to perform, but instead with the intention of
10  arbitrarily and unilaterally choosing and enforcing a maximum $100,000 Development Fee for
11  the Motorola project in the future to wrongfully take advantage of the additional time and
12  materials cost of the software development without tendering the unconditionally promised
13  payment therefore.
14        46.    INTELLIGRAPHICS reasonably relied on these promises to enter into the SDLA,
15  Amendment 3 and the agreement to pay for the development of the Advanced Roaming software
16  and the Motorola project software on the same basis as set forth in Amendment 3 and to
17  commence and continue to work on these software development projects in an effort to complete
18  them.  But for these promises, INTELLIGRAPHICS would not have entered into these
19  agreements nor commenced or continued development work on the Advanced Roaming
20  software.
21        47.    Upon information and belief, MARVELL's true intention at the time it made the
22  promises and representations set forth in paragraph 15 above was to attempt to avoid payment
23  for any work on the Vista, Advanced Roaming or CCX software development after
24  INTELLIGRAPHICS had billed a total of $250,000.  In fact MARVELL only paid $201,555.88
25  for work performed on a time and materials basis on the Vista, Advanced Roaming and CCX
26  development and nonetheless demanded completion and delivery of such software by
27  INTELLIGRAPHICS despite this refusal to pay for the remainder of the software development

28  **COMPLAINT FOR BREACH OF CONTRACT; BREACH OF IMPLIED CONTRACT FRAUD IN THE INDUCEMENT; DECLARATORY RELIEF – EQUITABLE ESTOPPEL; COPYRIGHT INFRINGEMENT; AND QUANTUM MERUIT**

effort.

48. Upon information and belief, MARVELL's true intention at the time it made the promises and representation set forth in paragraphs 23, 24 and 25 above was to attempt to avoid for payment of a substantial portion of INTELLIGRAPHICS's work on the software created during the Motorola project and to demand delivery of such software by INTELLIGRAPHICS despite its refusal to pay for the remainder of that software development effort.

49. INTELLIGRAPHICS was damaged by MARVELL's fraud in an amount to be proven at trial.

50. MARVELL's conduct was willful, despicable and fraudulent, and punitive damages should be awarded to INTELLIGRAPHICS.

**FOURTH CAUSE OF ACTION**

**(Fraud)**

51. Plaintiff INTELLIGRAPHICS hereby refers to and incorporates paragraphs through 47 as if set forth in full herein.

52. Upon information and belief, MARVELL intentionally made its promise to pay all Development Fees earned on a time and material basis for development and delivery of both the Advanced Roaming and the Cisco CCX v.4 Funk Supplicant Development software – made after INTELLIGRAPHICS's proper Development Fee billings under all of the software development projects identified herein reached $250,000 (as is more fully set forth in paragraph 22 herein) without any intention to perform.

53. Upon information and belief, MARVELL intentionally made its promise to pay all Development Fees earned on a time and material basis for development and delivery of the Motorola project software – made after MARVELL had initially attempted to invoke and enforce a unilateral $100,000 limit on total payments for INTELLIGRAPHICS's Motorola project software development and then backed down to again promise to pay all Development Fees based on time and material costs up to INTELLIGRAPHICS's estimate of $125,000, whereafter the parties would negotiate regarding additional compensation to INTELLIGRAPHICS for

INTELLIGRAPHICS to finish the work.

54. INTELLIGRAPHICS reasonably relied on these promises to continue to work on these software development projects in an effort to complete them. But for these promises, INTELLIGRAPHICS would not have continued development work on the Advanced Roaming software, the CCX v.4 Fund Supplicant Development software or the Motorola software development project.

55. Upon information and belief, MARVELL's true intention, at the time it made the promises and representations set forth in paragraphs 14 through 16 above, was to attempt to avoid payment for any work on this software development after INTELLIGRAPHICS had billed a total of $250,000 for work performed on a time and materials basis, and demand completion and delivery of such software by INTELLIGRAPHICS despite its refusal to pay for the remainder of software development effort.

56. Upon information and belief, MARVELL's true intention, at the time it made the promises and representations set forth in paragraphs 23 through 25 above, was to attempt to avoid payment for any work on the Motorola project software development after INTELLIGRAPHICS had billed a total of $100,000 for work performed on a time and materials basis, and demand completion and delivery of such software by INTELLIGRAPHICS despite its refusal to pay for the remainder of the software development effort.

57. INTELLIGRAPHICS was damaged by MARVELL's fraud in an amount to be proven at trial.

58. MARVELL's conduct was willful, despicable and fraudulent, and punitive damages should be awarded to INTELLIGRAPHICS.

**FIFTH CAUSE OF ACTION**

**(Declaratory Relief – Equitable Estoppel)**

59. Plaintiff INTELLIGRAPHICS hereby refers to and incorporates paragraphs through 31 as if set forth in full herein.

60. MARVELL repeatedly represented that it would continue to pay for

14

COMPLAINT FOR BREACH OF CONTRACT; BREACH OF IMPLIED CONTRACT FRAUD IN THE INDUCEMENT; DECLARATORY RELIEF – EQUITABLE ESTOPPEL; COPYRIGHT INFRINGEMENT; AND QUANTUM MERUIT

1  INTELLIGRAPHICS' software development work as described herein with knowledge that it
2  would not in fact do so.
3     61.    INTELLIGRAPHICS had no knowledge that MARVELL would not pay for
4  INTELLIGRAPHICS' software development work as MARVELL represented.
5     62.    When making these representations, MARVELL intended that
6  INTELLIGRAPHICS would continue all software development work as described herein and
7  continue to incur costs for the employment of its computer programmers, management and staff,
8  and all related hardware and related overhead expenses, for the development of this software.
9     63.    INTELLIGRAPHICS reasonably relied on these representations and was induced
10 thereby to undertake, and did undertake, continuing software development work as described
11 herein, incurring significant costs and expenses related thereto.
12    64.    An actual and justifiable controversy exists between Plaintiff and Defendant.
13 Plaintiff INTELLIGRAPHICS contends that based on the allegations set forth herein, this Court
14 should issue a declaratory judgment that Defendant MARVELL is estopped from pursuing any
15 defense to INTELLIGRAPHICS' claims for damages for breach of contract, breach of implied
16 contract or quantum meruit herein based upon any allegation that the parties agreed that
17 INTELLIGRAPHICS was obligated to fully develop the Vista, Advanced Roaming, CCX and
18 Motorola project software described herein, and to deliver completed object modules related
19 thereto, for a total payment of no more than $250,000 for the Vista, Advanced Roaming and
20 CCX projects and no more than $100,000 on the Motorola software development project.
21    65.    For its part, upon information and belief, Defendant MARVELL contends that it
22 should be permitted to defend INTELLIGRAPHICS's breach of contract and breach of implied
23 contract claims by asserting that INTELLIGRAPHICS is required to complete all Vista,
24 Advanced Roaming and CCX software development for a total payment of no more than
25 $250,000 and all Motorola project software development for no more than $100,000.
26    66.    A judicial determination is necessary and appropriate in order to determine the
27 parties' rights and obligations concerning the requested application of equitable estoppel as set

forth herein.

## SIXTH CAUSE OF ACTION

### (Copyright Infringement under 17 U.S.C. §§ 101 *et. seq.*)

67.     Plaintiff INTELLIGRAPHICS hereby refers to and incorporates paragraphs through 31 as if set forth in full herein.

68.     Defendant MARVELL's acts in incorporating Plaintiff INTELLIGRAPHICS's copyrighted Advanced Roaming Software and its Motorola development project software into its microchips and marketing and selling these microchips (with INTELLIGRAPHICS's copyrighted Advanced Roaming and Motorola project software incorporated therein) without making the payment of all Development Fees incurred for such work on a time and materials basis necessary to the effective purchase of INTELLIGRAPHICS's intellectual property rights with regard to such software – constitute infringement of INTELLIGRAPHICS's copyrights.

69.     INTELLIGRAPHICS is informed and believes, and on such basis alleges, that Defendant MARVELL's infringement of INTELLIGRAPHICS' copyrights in its Advanced Roaming and Motorola project software was deliberate, willful, malicious, oppressive, and without regard to INTELLIGRAPHICS' proprietary rights.

70.     Defendant MARVELL's copyright infringement has caused, and will continue to cause INTELLIGRAPHICS to suffer substantial injuries, loss and damage to its proprietary and exclusive rights to the Advanced Roaming and Motorola project software, and has further damaged INTELLIGRAPHICS's business, reputation and good will, diverted its trade and caused a loss of profits, all in an amount not yet ascertained, which amount is to be proven at trial.

71.     Defendant MARVELL's copyright infringement, and the threat of continuing infringement, has caused, and will cause, INTELLIGRAPHICS repeated and irreparable injury. It is difficult to ascertain the amount of money damages that would afford INTELLIGRAPHICS complete and adequate relief at law for Defendant's continuing acts.   INTELLIGRAPHICS remedy at law is not adequate to compensate it for the injuries already inflicted and further

threatened by Defendant MARVELL.  Therefore, Defendant MARVELL should be restrained and enjoined pursuant to the Copyright Act for any further acts constituting an infringement of INTELLIGRAPHICS's copyrighted software as described herein pursuant to the Copyright Act, 17 U.S.C. §§ 502.

## SEVENTH CAUSE OF ACTION

### (Quantum Meruit)

72. Plaintiff INTELLIGRAPHICS hereby refers to and incorporates paragraphs through 31 as if set forth in full herein.

73. As alleged herein, Plaintiff INTELLIGRAPHICS has performed work for Defendant MARVELL which has benefited Defendant and which all parties expected Defendants to pay for, in an amount to be proven at trial.

WHEREFORE, Plaintiff INTELLIGRAPHICS prays that this Court enter judgment in its favor on its causes of action set forth above and award it relief including, but not limited to, the following:

A. The Court's issuance of an injunction preliminarily and permanently enjoining and restraining Defendant MARVELL and its respective affiliates, officers, directors, employees, agents, servants, representatives, successors and assigns, and all persons in active concert or participation with or affiliated with Defendant, from:

(1) Marketing, selling or distributing any microchips which incorporate any part of the Advanced Roaming or Motorola project software developed by INTELLIGRAPHICS as set forth herein;

(2) Otherwise infringing on any of INTELLIGRAPHICS's copyrights.

B. Awarding INTELLIGRAPHICS for Defendant MARVELL's copyright infringement either: (1) actual damages in an amount to be determined at trial; or (2) statutory damages for each act of infringement in an amount provided by law, as set forth in 17 U.S.C. §504, at INTELLIGRAPHICS's election before the entry of a final judgment.

C. The Court's issuance of an order requiring Defendant MARVELL to file with this

17

COMPLAINT FOR BREACH OF CONTRACT; BREACH OF IMPLIED CONTRACT FRAUD IN THE INDUCEMENT; DECLARATORY RELIEF – EQUITABLE ESTOPPEL; COPYRIGHT INFRINGEMENT; AND QUANTUM MERUIT

1  Court and serve on INTELLIGRAPHICS within 30 days after service of the injunction described
2  above a report, in writing, under oath, setting forth in detail the manner and form in which
3  Defendant has complied with the injunction;
4       D.    The Court's issuance of an order that MARVELL destroy all microchips into
5  which MARVELL has incorporated any of INTELLIGRAPHICS's software, including but not
6  limited to its Advanced Roaming Software and its Motorola project software, and which have
7  not been sold to third parties not including any of MARVELL's respective affiliates, officers,
8  directors, employees, agents, servants, representatives, successors and assigns, or any persons in
9  active concert or participation with or affiliated with Defendant MARVELL, pursuant to 15
10 U.S.C. § 1118;
11      E.    Awarding INTELLIGRAPHICS monetary relief, including damages sustained by
12 INTELLIGRAPHICS in an amount not yet determined, and the costs of the copyright action,
13 including attorneys fees, pursuant to 15 U.S.C. § 1117(a);
14      F.    The Court's issuance of an order that Defendant MARVELL disgorge all profits
15 obtained from its wrongful use of INTELLIGRAPHICS's copyrighted software, including but
16 not limited to its Advanced Roaming and Motorola project software, pursuant to 15 U.S.C. §
17 1117(a);
18      G.    On its other claims, awarding INTELLIGRAPHICS compensatory damages
19 according to proof;
20      H.    Awarding INTELLIGRAPHICS punitive damages;
21      I.    Issuing a declaration that Defendant MARVELL is estopped from pursuing any
22 defense to INTELLIGRAPHICS's claims for damages for breach of contract or breach of
23 implied contract herein based upon any allegation that the parties agreed that
24 INTELLIGRAPHICS was obligated to fully develop the Advanced Roaming and Hourly CCX
25 v.4 Funk Supplicant Development software described herein, and deliver completed object
26 modules related thereto, for a total payment of no more than $250,000, and fully develop the
27 Motorola project software described herein, and deliver completed object modules related
28

**COMPLAINT FOR BREACH OF CONTRACT; BREACH OF IMPLIED CONTRACT FRAUD IN THE INDUCEMENT; DECLARATORY RELIEF – EQUITABLE ESTOPPEL; COPYRIGHT INFRINGEMENT; AND QUANTUM MERUIT**

1  thereto, for a total payment of no more than $100,000.

2      J.    For such other and further relief as the Court may deem just and proper.

3

4  DATED:    June 19, 2007        SOMMERS & SCHWARTZ LLP

5

6                                          _____

7                                          Andrew Schwartz, Attorney for Plaintiff Intelligraphics, Inc.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**COMPLAINT FOR BREACH OF CONTRACT; BREACH OF IMPLIED CONTRACT FRAUD IN THE INDUCEMENT; DECLARATORY RELIEF – EQUITABLE ESTOPPEL; COPYRIGHT INFRINGEMENT; AND QUANTUM MERUIT**