MAYER BROWN LLP
MICHAEL A. MOLANO (SBN 171057)
 *mmolano@mayerbrown.com*
JOSHUA M. MASUR (SBN 203510)
 *jmasur@mayerbrown.com*
J. JOANN LIAO (SBN 227329)
 *jliao@mayerbrown.com*
Two Palo Alto Square, Suite 300
3000 El Camino Real
Palo Alto, Califonia 94306-2112
Telephone: (650) 331-2000
Facsimile:  (650) 331-2060

Attorneys for Defendant and Counterclaimant
MARVELL SEMICONDUCTOR, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| INTELLIGRAPHICS, INC.,<br><br>  *Plaintiff and Counterdefendant,*<br><br>  v.<br><br>MARVELL SEMICONDUCTOR, INC.,<br><br>  *Defendant and Counterclaimant.* | Case No. C-07-2499 JCS<br><br>**MARVELL SEMICONDUCTOR, INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS ON THE SIXTH CAUSE OF ACTION (COPYRIGHT) OF THE FIRST AMENDED COMPLAINT**<br><br>**PUBLIC VERSION**<br><br>Before: Hon. Joseph C. Spero<br><br>Date: Friday, May 2, 2008<br><br>Time: 9:30 a.m.<br><br>Courtroom A, 15th Floor |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

NOTICE OF MOTION AND MOTION ................................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................ 1

I.   STATEMENT OF THE ISSUES TO BE DECIDED (CIV. L.R. 7-4(A)(3)) ............. 1

II.  INTRODUCTION ......................................................................................................... 2

III. LEGAL STANDARD .................................................................................................... 2

IV.  FACTS PLED OR ADMITTED BY INTELLIGRAPHICS ..................................... 2
     A.   Relevant Provisions of the SDLA ....................................................................... 3
          1.   The Difference Between "Base Code" and "Custom Software." ............. 3
          2.   Ownership and Licensing of Intelligraphics' Preexisting "Base Code" in Software Delivered to Marvell ............................................. 4
          3.   Ownership and Licensing of "Custom Software" Developed by Intelligraphics for Marvell ....................................................................... 5
          4.   ████████████████████████████████████████ ............. 6
          5.   ████████████████████████████████████████ ............. 6
     B.   Intelligraphics' Alleged Copyrights and Marvell's Alleged Copyright Infringement ......................................................................................... 6

V.   ARGUMENT .................................................................................................................. 7
     A.   The SDLA Does Not Condition Marvell's License on Payment of Intelligraphics' Development Fee ........................................................................ 8
          1.   The Ownership of Copyright and a Copyright License Are Legally Distinct ........................................................................................... 8
          2.   Because the SDLA Requires Marvell to Exercise Its License Rights Before Completing Payment of Intelligraphics' Development Fees, Marvell's License Cannot Be Contingent on Payment ........................................................................................ 9
               a)   The SDLA Requires Marvell to ████████████████████ ████████████ .............................................................................. 9
               b)   The Base Code License Is Insufficient for Marvell to Perform the Evaluation, Testing, and Distribution Required Prior to Completing Payment .............................................................. 10
               c)   The General License, Granted Unconditionally, Permits Marvell to Perform Its Obligations under the SDLA ......................... 11
     B.   Because Marvell Has Acted Within the Scope of Its License, Intelligraphics May Not Sue for Copyright Infringement ............................... 12

VI.  CONCLUSION ............................................................................................................ 13

# TABLE OF AUTHORITIES

**Cases**

*Crow Tribe of Indians v. Racicot*,
   87 F.3d 1039 (9th Cir. 1996) ............................................................................................. 2

*Davis v. Blige*,
   505 F.3d 90 (2d Cir. 2007) ................................................................................................. 9

*Effects Assocs. v. Cohen*,
   908 F.2d 555 (9th Cir. 1990) ................................................................................. 9, 11, 13

*Hilgraeve Corp. v. Symantec Corp.*,
   265 F.3d 1336 (Fed. Cir. 2001) .......................................................................................... 8

*Milne ex rel. Coyne v. Stephen Slesinger, Inc.*,
   430 F.3d 1036 (9th Cir. 2005) ............................................................................................ 2

*Parsons v. Bristol Dev. Co.*,
   62 Cal.2d 861 (1965) .......................................................................................................... 2

*Stoumbos v. Kilimnik*,
   988 F.2d 949 (9th Cir.) *cert. denied*, 510 U.S. 867 (1993) ............................................... 3

*Sun Microsystems, Inc. v. Microsoft Corp.*,
   188 F.3d 1115 (9th Cir. 1999) ................................................................................. 9, 12, 13

**Statutes**

17 U.S.C. § 101 ......................................................................................................................... 8

17 U.S.C. § 106 ......................................................................................................................... 8

17 U.S.C. § 501(b) .................................................................................................................... 8

Cal. Evid. Code § 310(a) .......................................................................................................... 2

**Rules**

Fed. R. Civ. P. 10(c) ................................................................................................................. 2

Fed. R. Civ. P. 12(c) ................................................................................................................. 2

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on May 2, 2008, at 9:30am, or as soon thereafter as the matter may be heard, Defendant and Counterclaimant Marvell Semiconductor, Inc. ("Marvell" or "Defendant") will, and hereby does, move this Court, located in Courtroom A, 15th Floor, of the United States District Court, 450 Golden Gate Avenue, San Francisco, California, the Honorable Joseph C. Spero presiding, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, for judgment on the pleadings with respect to the Sixth Cause of Action (Copyright Infringement under 17 U.S.C. §§ 101 *et. seq.*) of Plaintiff and Counterdefendant Intelligraphics, Inc.'s ("Intelligraphics'") First Amended Complaint ("Complaint"), filed on June 19, 2007 (Docket No. 6), with costs, and for such other and further relief as to the Court may seem just and proper.

By this Motion, Marvell seeks that the Court enter judgment on the pleadings in its favor with respect to the Sixth Cause of Action because, as more fully set forth in the Memorandum of Points and Authorities filed herewith, the facts pled do not permit Intelligraphics to prevail on its copyright claims.

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.   **STATEMENT OF THE ISSUES TO BE DECIDED (CIV. L.R. 7-4(a)(3))**

1.   Whether Marvell's alleged acts of copyright infringement fall within the scope of its license from Intelligraphics under the parties' Software Development and Licensing Agreement.

2.   Whether Marvell's license therefore precludes Intelligraphics' claim for copyright infringement.

## II. INTRODUCTION.

This case is fundamentally a contract payment dispute, in which Intelligraphics has thrown a copyright claim for good measure. As a matter of law, however, Marvell cannot have infringed any copyright of Intelligraphics. The reason is simple: Even assuming, as required at judgment on the pleadings, that Intelligraphics actually owns the copyrights in the software in dispute, each and every allegedly infringing act identified by Intelligraphics' Complaint falls not only within the scope of the license that Intelligraphics granted to Marvell, but also within the scope of Marvell's express obligations under the contract. As a matter of law, then, Marvell is expressly licensed, and Intelligraphics' claims ring in contract, **not in copyright**. Judgment should be entered against Intelligraphics on its Sixth Cause of Action.

## III. LEGAL STANDARD.

"After the pleadings are closed — but early enough not to delay trial — a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). "[J]udgment on the pleadings is properly granted when, taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law." *Milne ex rel. Coyne v. Stephen Slesinger, Inc.*, 430 F.3d 1036, 1042 (9th Cir. 2005) (quoting *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001)). "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." FED. R. CIV. P. 10(c).

## IV. FACTS PLED OR ADMITTED BY INTELLIGRAPHICS.

As required on a motion for judgment on the pleadings, and for purposes of this Motion only, this Motion adopts the fiction that all factual allegations contained in Intelligraphics' pleadings are true. *See, e.g.*, *Milne*, 430 F.3d at 1042.[1]

---

[1] To the extent that Intelligraphics disagrees with Marvell's proposed interpretation of the parties' contract, Marvell notes that such disagreement is not a dispute of fact for a jury, but of law for the Court. *See, e.g.*, CAL. EVID. CODE § 310(a) ("All questions of law (including but not limited to questions concerning the construction of statutes and other writings…) are to be decided by the court"); *Parsons v. Bristol Dev. Co.*, 62 Cal.2d 861, 865 (1965) ("It is … solely a judicial function to interpret a written instrument unless the interpretation turns upon the credibility of extrinsic evidence"); *Crow Tribe of Indians v. Racicot*, 87 F.3d 1039, 1045 (9th Cir. 1996) (citing *Stoumbos v.*

A.   **Relevant Provisions of the SDLA.**

Intelligraphics developed certain software for Marvell pursuant to a Software Development and Licensing Agreement ("SDLA"), which was entered in July 2003, and subsequently amended by the parties. *See, e.g.*, Compl., ¶ 7[2]; *see also* Ex. A to 1st Am. Ans. & Countercl. (Docket No. 19, filed Jul. 27, 2007) ("SDLA, Ex. A"). In particular, the parties entered into Amendment 3 to the SDLA in 2006. *See* Compl., ¶¶ 13-14[3]; *see also* Ex. B to 1st Am. Ans. & Countercl. ("Amend. 3, Ex. B")

   1.   ***The Difference Between "Base Code" and "Custom Software."***

The SDLA imposes two different licensing and ownership schemes for software delivered thereunder. The first scheme covers software originally developed by Intelligraphics before the parties entered the SDLA, called "Base Code." *See* SDLA, Ex. A, ¶ 1.2 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮).[4] Once that "Base Code" had been "modified by Intelligraphics as defined and described" in the SDLA, for use by Marvell, it was called "Enhanced Base Code." *See id.*, ¶ 1.6 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮"); *accord generally* Compl., ¶ 8 ("the SDLA first granted MARVELL a non-exclusive provisional license to INTELLIGRAPHICS's existing Basic 802.11-related modules (The 'Base Code') which would ultimately be incorporated into the final product being created for MARVELL").

The second scheme covers the "Custom Software" to be developed and delivered by Intelligraphics. As amended, the SDLA defines "Custom Software," in relevant part, to include

---

*Kilimnik*, 988 F.2d 949, 954 (9th Cir.) *cert. denied*, 510 U.S. 867 (1993); "interpretation of a contract is an issue of law"). Indeed, Intelligraphics' answer to Marvell's counterclaims expressly admits that characterizations of the parties' respective obligations under the SDLA are "conclusions of law to which no response is necessary." Answer to Countercl., ¶ 99.

[2] Intelligraphics' Answer to Marvell's counterclaims admits that Exhibit A to Marvell's Answer and Countercomplaint is a true and correct copy of the 2003 SDLA. *Compare* Amended Answer & Countercl., ¶ 99, *with* Answer to Countercl., ¶ 99.

[3] Intelligraphics' Answer to Marvell's counterclaims admits that Exhibit B to Marvell's Answer and Countercomplaint is a true and correct copy of Amendment 3 to the SDLA. *See* n. 2, *supra*.

[4] The highlighted portions of this document are not intended for emphasis, but rather, to identify portions redacted from the public version, as required by Local Rule 79-5.

                                                                                                                                                   Amend. 3, Ex. B, at 1, ¶ 1 (                                    ); *accord* Compl., ¶ 7 (describing "Custom Software").

### 2. *Ownership and Licensing of Intelligraphics' Preexisting "Base Code" in Software Delivered to Marvell.*

The SDLA unconditionally granted Marvell a broad license to the Base Code originally developed by Intelligraphics, and to the Enhanced Base Code that Intelligraphics modified for Marvell:



SDLA, Ex. A, ¶ 4.1; *accord* Compl., ¶ 8 ("the SDLA first granted MARVELL a non-exclusive provisional license to INTELLIGRAPHICS's existing Basic 802.11-related modules (The 'Base Code') which would ultimately be incorporated into the final product being created for MARVELL"). Notwithstanding the breadth of Marvell's *license* rights in the Base Code and Enhanced Base Code, the SDLA                                                                                                        *Id.*, ¶ 6.3.

3.  ***Ownership and Licensing of "Custom Software" Developed by Intelligraphics for Marvell.***

Paragraph 6.1(a) of the SDLA arguably conditions[5] transfer of ***ownership*** of the Custom Software developed by Intelligraphics for Marvell on Marvell's payment of Development Fees or



SDLA, Ex. A, ¶ 6.1(a) (emphasis added); *accord* Compl., ¶¶ 7, 9 (characterizing same).

Paragraph 6.1(b) of the SDLA grants Marvell a broad ***license*** in the Custom Software:



---

[5] This Motion assumes, as required on judgment on the pleadings, that the language of Paragraph 6.1(a) imposes a condition precedent, because that determination requires a complex inquiry that need not be undertaken at this time.

1 [REDACTED]

2 SDLA, Ex. A, ¶ 6.1(b) (emphasis added).  In contrast to Paragraph 6.1(a), which at least

3 arguably conditions transfer of *ownership* on Marvell's payment and other acts, the language of

4 Paragraph 6.1(b) [REDACTED]

5 4. [REDACTED]

6 [REDACTED]

7 [REDACTED]

8 [REDACTED]

9 [REDACTED]

10 [REDACTED] SDLA, Ex. A, ¶ 3.2.

11 5. [REDACTED]

12 [REDACTED]

13 [REDACTED]

14 [REDACTED]

15 [REDACTED]

16 [REDACTED] SDLA, Ex. A, ¶ 5.1.

 B. **Intelligraphics' Alleged Copyrights and Marvell's Alleged Copyright Infringement.**

Intelligraphics' Complaint asserts that it has registered copyrights in both the Advanced Roaming and Motorola software, that it has complied with the relevant requirements of the Copyright Act, and that therefore, it "is the owner of all rights, title and interest to the federal copyright registrations."  Compl., ¶¶ 30-31.  Intelligraphics' Complaint alleges that development of this software was governed either by the SDLA as amended by the parties' Amendments 1, 2, and 3, *see id.*, ¶ 33,[6] or by an implied contract that incorporated the terms set forth therein.  *See*

---

[6] "INTELLIGRAPHICS and MARVELL entered into an agreement for INTELLIGRAPHICS to develop and deliver the … Advanced Roaming … software and the Motorola project software, pursuant to the specifications the parties adopted in connection therewith, and to be paid the Development Fees for such work on a time and materials basis as set forth in Attachments 1 and 2 of Amendment 3."

*id.*, ¶ 38.[7] Under either theory, however, Intelligraphics' Complaint alleges that the terms of the SDLA, as amended by Amendments 1 through 3, govern the development of both the Advanced Roaming and Motorola software.

Intelligraphics' Complaint asserts that Marvell has committed copyright infringement by copying the Advanced Roaming software and Motorola software into hardware or software products, and distributing those products to its customers, without first obtaining ownership of the software by making the full payment demanded by Intelligraphics:

> Defendant MARVELL's acts in incorporating Plaintiff INTELLIGRAPHICS's copyrighted Advanced Roaming Software and its Motorola development project software into its microchips and marketing and selling these microchips (with INTELLIGRAPHICS's copyrighted Advanced Roaming and Motorola project software incorporated therein) without making the payment of all Development Fees incurred for such work on a time and materials basis necessary to the effective purchase of INTELLIGRAPHICS's intellectual property rights with regard to such software – constitute infringement of INTELLIGRAPHICS's copyrights.

Compl., ¶ 68; *accord, e.g., id.* at ¶¶ 28-29.

Because Intelligraphics has pled that Marvell has not paid the full amounts allegedly due, *see, e.g., id.*, ¶ 68, for purposes of this Motion only, Marvell does not assert that it has acquired ownership of the Advanced Roaming or Motorola software.

## V.    ARGUMENT

Because even under Intelligraphics' own theory of the case, the SDLA expressly licenses each and every alleged act of infringement, Intelligraphics cannot, as a matter of law, prevail on its claim for copyright infringement.

---

[7] "The terms of this implied in fact contract provided, among other things, for MARVELL to pay INTELLIGRAPHICS for its software development work on the Advanced Roaming software and the Motorola project in the same manner as … pursuant to Attachments 1and 2 of Amendment 3."

A. **The SDLA Does Not Condition Marvell's License on Payment of Intelligraphics' Development Fee.**

Intelligraphics' copyright infringement claim erroneously assumes that until and unless Marvell obtained ownership of the Custom Software – in particular, the Advanced Roaming and Motorola software – Marvell's rights were limited to the Base Code license. In fact, under the SDLA, Marvell received a broad and unconditional nonexclusive license in the Custom Software, and only transfer of *ownership* was conditioned on complete payment of Intelligraphics' Development Fees.

1. *The Ownership of Copyright and a Copyright License Are Legally Distinct.*

Section 101 of the Copyright Act – the definitions section of the statute – explicitly establishes that a "transfer of copyright ownership" is legally distinct from a "nonexclusive license": "A 'transfer of copyright ownership' is an assignment, mortgage, exclusive license, or any other conveyance, alienation, or hypothecation of a copyright or of any of the exclusive rights comprised in a copyright, whether or not it is limited in time or place of effect, ***but not including a nonexclusive license***." 17 U.S.C. § 101 (emphasis added).

The Copyright Act grants numerous rights to the copyright owner. In particular, the copyright owner "has the exclusive rights to do and to authorize [others] to reproduce the copyrighted work…; to prepare derivative works based upon the copyrighted work; [and] to distribute copies … of the copyrighted work to the public…." 17 U.S.C. § 106. Moreover, only a copyright owner "is entitled … to institute an action for any infringement." 17 U.S.C. § 501(b).

Because the copyright owner has the right "to authorize" reproduction, preparation of derivative works, and distribution of copies, it has the right to grant nonexclusive licenses. Such a nonexclusive license is "considered as nothing more than a promise by the licensor not to sue the licensee." *Hilgraeve Corp. v. Symantec Corp.*, 265 F.3d 1336, 1346 (Fed. Cir. 2001) (quoting *Jim Arnold Corp. v. Hydrotech Sys., Inc.*, 109 F.3d 1567, 1577 (Fed. Cir. 1997)

1  (internal quotations omitted)).  Thus, a copyright holder who grants a nonexclusive license "has

2  given up … the right to sue [the licensee] for copyright infringement" based on the licensed acts.

3  *Effects Assocs. v. Cohen*, 908 F.2d 555, 559 (9th Cir. 1990).  As the Ninth Circuit has noted,

> Whether this is a copyright or a contract case turns on … the scope of the license.  Generally, a copyright owner who grants a nonexclusive license to use his copyrighted material waives his right to sue the licensee for copyright infringement and can sue only for breach of contract.  If, however, a license is limited in scope and the licensee acts outside the scope, the licensor can bring an action for copyright infringement.

*Sun Microsystems, Inc. v. Microsoft Corp.*, 188 F.3d 1115, 1121 (9th Cir. 1999) (internal citations and quotations omitted); *accord, e.g.*, *Davis v. Blige*, 505 F.3d 90, 100 (2d Cir. 2007) ("A valid license … immunizes the licensee from a charge of copyright infringement, provided that the licensee uses the copyright as agreed with the licensor").

### 2. **Because the SDLA Requires Marvell to Exercise Its License Rights Before Completing Payment of Intelligraphics' Development Fees, Marvell's License Cannot Be Contingent on Payment.**

Intelligraphics' Complaint ignores that the express license granted by Intelligraphics is not "limited in scope," but rather, is sufficiently broad to encompass each alleged act of infringement.  *Sun Microsystems*, 188 F.3d at 1121.

#### a) *The SDLA Requires Marvell to* [REDACTED]



- 9 -
PUBLIC MOT. FOR J. ON THE PLEADINGS ON SIXTH CAUSE OF ACTION (COPYRIGHT) - CASE NO. C-07-2499 JCS

1 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
2 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
3 SDLA, Ex. A, ¶ 3.2 (emphasis added). ▓▓▓▓▓▓▓▓▓▓▓▓▓▓
4 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
5 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
6 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
7 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
8 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
9 SDLA, Ex. A, ¶ 5.1 (emphasis added). As a result, even Intelligraphics' own complaint admits
10 that "payment for the completed Milestone Deliverables from MARVELL … ***would occur only***
11 ***after*** INTELLIGRAPHICS completed the development of and delivered specific Milestone
12 Deliverables of the Custom Software and ***MARVELL approved and accepted them***." Compl.,
13 ¶ 9 (emphasis supplied).
14      Intelligraphics apparently contends that until Marvell has paid Intelligraphics'
15 Development Fees in full, the only license Marvell receives is the Base Code license set forth in
16 Paragraph 4.1, not the broad license to the Custom Software provided under Paragraph 6.1(b).
17 *See* Compl., ¶ 8. In other words, Intelligraphics asserts that the limitations of Paragraph 6.1(a),
18 which arguably condition transfer of ***ownership*** on payment of all Development Fees, also
19 condition the grant of the broad license under Paragraph 6.1(b). Intelligraphics' reading violates
20 both the SDLA and the law.
21      b) *The Base Code License Is Insufficient for Marvell to Perform the*
22      *Evaluation, Testing, and Distribution Required Prior to*
23      *Completing Payment.*
24      As an initial matter, Intelligraphics ignores that the Base Code license, by its very terms,
25 applies only to the Base Code and Enhanced Base Code – software originally developed by
26 Intelligraphics before the parties entered the SDLA, or such software as modified for Marvell.
27 *See supra*, § IV.A.1-2. But ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
28

1 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
2 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
3 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Those actions are not, and cannot be, covered by the Base Code License, which is limited to software originally developed by Intelligraphics before the parties entered the SDLA and as modified for Marvell.

    c)  *The General License, Granted Unconditionally, Permits Marvell to Perform Its Obligations under the SDLA.*

Unlike the Base Code License, the broad license set forth in Paragraph 6.1(b) of the SDLA is sufficiently broad to permit Marvell to evaluate, test, and deliver the Custom Software:



SDLA, Ex. A, ¶ 6.1(b) (emphasis added). For the reasons set forth above, it would make no sense to interpret the license under Paragraph 6.1(b) as conditioned on complete payment of Intelligraphics' Development Fees by Paragraph 6.1(a). But even if such an interpretation were plausible, it would be merely so, and a merely plausible reading cannot, as a matter of law, impose a condition precedent. "Conditions precedent are disfavored and will not be read into a contract unless required by ***plain, unambiguous language***." *Effects Assocs.*, 908 F.2d at 559 n 7 (emphasis added) (citing *Sulmeyer v. United States (In re Bubble Up Delaware, Inc.)*, 684 F.2d 1259, 1264 (9th Cir. 1982)). By definition, an arguable reading cannot be "plain, unambiguous language," and cannot meet the legal requirements to create a condition precedent.

The sole reasonable interpretation of *all* the relevant provisions of the SDLA is that even assuming *arguendo* that Paragraph 6.1(a) conditions transfer of copyright ownership – including the right to sue others for infringement – on complete payment of the Development Fees, the broad nonexclusive license to the Custom Software under Paragraph 6.1(b) was unconditional.

1        B.    **Because Marvell Has Acted Within the Scope of Its License, Intelligraphics**
2             **May Not Sue for Copyright Infringement.**

3      "If" – and only if – "a license is limited in scope and the licensee acts outside the scope,
4  the licensor can bring an action for copyright infringement." *Sun Microsystems*, 188 F.3d at
5  1121. Here, however, the express license granted by Intelligraphics is anything but "limited in
6  scope." Indeed, the SDLA expressly grants Marvell a license to use the software developed by
7  Intelligraphics thereunder "███████████████████████████████████████
8  ███████████████████████████████████" SDLA, Ex. A, ¶ 6.1(b).

9      Moreover, each of the specific allegedly infringing acts identified by Intelligraphics'
10 complaint are specifically and explicitly licensed under the SDLA. Intelligraphics complains
11 that Marvell has infringed its copyrights by "incorporating Plaintiff INTELLIGRAPHICS's
12 copyrighted Advanced Roaming Software and its Motorola development project software into its
13 microchips," Compl., ¶ 68; but the SDLA expressly grants Marvell "████████████████
14 ██████████████████████████████████" rights that cover each of these
15 alleged acts of infringement. SDLA, Ex. A, ¶ 6.1(b). Similarly, Intelligraphics complains that
16 Marvell has infringed its copyrights by "marketing and selling these microchips (with
17 INTELLIGRAPHICS's copyrighted Advanced Roaming and Motorola project software
18 incorporated therein)," Compl., ¶ 68, and by "shipping the Advanced Roaming software (with
19 embedded CCX features) … [and] the Motorola software … as part of its wireless
20 communications cards," *id.*, ¶¶ 28-29; but the SDLA expressly grants Marvell "████████
21 ██████████████████████████████" rights that cover each of these alleged acts of
22 infringement – and indeed, *requires* that Marvell deliver the software in question to its OEM and
23 ODM licensees *before payment even becomes due*. SDLA, Ex. A, ¶¶ 6.1(b), 3.2.

24     Intelligraphics' Complaint expressly pleads that the parties rights and obligations as to
25 the Advanced Roaming and Motorola software are determined by the SDLA. But the SDLA
26 explicitly licenses each and every alleged act of infringement by Marvell. As a result, the very

27
28

facts pled by Intelligraphics preclude a claim for copyright infringement. *See, e.g.*, *Sun Microsystems*, 188 F.3d at 1121; *Effects Assocs.*, 908 F.2d at 559.

## VI. CONCLUSION.

Even if Intelligraphics were to prove all facts pled in the complaint to be true, Marvell would be, at very least, its nonexclusive licensee. As a matter of law, the fact that Marvell is licensed precludes Intelligraphics from prevailing on its infringement claim. Intelligraphics' allegations add up, at most, to a claimed "failure to compensate." *Effects Assocs.*, 908 F.2d at 555. Because Marvell acted within the scope of its license, any putative injury suffered by Intelligraphics may be remedied only under its contract or related claims, not under copyright law. *See, e.g.*, *Sun Microsystems*, 188 F.3d at 1121.

The Court should enter judgment on the pleadings with respect to Intelligraphics' copyright claims, on which its Sixth Cause of Action solely rests, and should dismiss the Sixth Cause of Action.

Dated: March 18, 2008                                    MAYER BROWN LLP

                                                         By: */s/*
                                                               Michael A. Molano

                                                         Attorneys for Defendant and Counterclaimant
                                                         MARVELL SEMICONDUCTOR, INC.

*Filer's Attestation: Pursuant to General Order No. 45, Section X(B), the filer hereby attests that the signatories' concurrence in the filing of this document has been obtained.*