MAYER BROWN LLP
MICHAEL A. MOLANO (SBN 171057)
 *mmolano@mayerbrown.com*
JOSHUA M. MASUR (SBN 203510)
 *jmasur@mayerbrown.com*
J. JOANN LIAO (SBN 227329)
 *jliao@mayerbrown.com*
Two Palo Alto Square, Suite 300
3000 El Camino Real
Palo Alto, Califonia 94306-2112
Telephone: (650) 331-2000
Facsimile:  (650) 331-2060

Attorneys for Defendant and Counterclaimant
MARVELL SEMICONDUCTOR, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| INTELLIGRAPHICS, INC.,<br><br>　　　　*Plaintiff and Counterdefendant,*<br><br>　　v.<br><br>MARVELL SEMICONDUCTOR, INC.,<br><br>　　　　*Defendant and Counterclaimant.* | Case No. C-07-2499 JCS<br><br>**MARVELL SEMICONDUCTOR, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS ON THE SIXTH CAUSE OF ACTION (COPYRIGHT) OF THE FIRST AMENDED COMPLAINT**<br><br>**PUBLIC VERSION**<br><br>Before: Hon. Joseph C. Spero<br><br>Date: Friday, July 25, 2008<br><br>Time: 9:30 a.m.<br><br>Courtroom A, 15th Floor |

# TABLE OF CONTENTS

I. INTRODUCTION. ...........................................................................................................1

II. ARGUMENT IN REPLY. ..............................................................................................1

    A. If Marvell Never Received a License, Paragraph 6.1(b) Would Not Grant It the Right to "Sublicense." ......................................................................................... 1

    B. The SDLA, not "All Contracts for Software Development," Granted Marvell a License Sufficient to Meet Its Testing and Acceptance Obligations. ............................ 2

    C. The Fact that Marvell Retains its Preexisting Ownership Rights Is Irrelevant to Marvell's License in the Custom Software as a Whole. ................................................. 4

    D. Intelligraphics' Failure to Rescind or Terminate the SDLA Precludes Its Infringement Claim. ......................................................................................................... 4

III. CONCLUSION. ..............................................................................................................5

# TABLE OF AUTHORITIES

**Cases**

*Costello Publishing Co. v. Rotelle,*
    670 F.2d 1035 (D.C. Cir. 1981) .................................................................................. 4

*Effects Assocs. v. Cohen,*
    908 F.2d 555 (9th Cir. 1990) ....................................................................................... 3

*Gardner v. Nike, Inc.*,
    279 F.3d 774 (9th Cir. 2002) ....................................................................................... 2

*Miller v. Glenn Miller Prods., Inc.,*
    454 F.3d 975 (9th Cir. 2006) ....................................................................................... 2

*Rano v. Sipa Press, Inc.*,
    987 F.2d 580 (9th Cir. 1993) .................................................................................. 4, 5

*TVT Records v. Island Def Jam Music Group*,
    412 F.3d 82 (2d Cir. 2005) ........................................................................................... 5

**Statutes**

17 U.S.C. § 106 .................................................................................................................... 3

**Treatises**

3 NIMMER ON COPYRIGHT § 10.15[A] (Bender 1992) ....................................................... 4

I.     **INTRODUCTION.**

At its core, Intelligraphics' Opposition essentially claims that any license Marvell received under the parties' 2003 Software Development and Licensing Agreement ("SDLA") covered only a small subset of the software delivered by Intelligraphics, and that Marvell could receive no substantial rights until it completed payment. But Intelligraphics' proposed interpretation ignores the clear language of the SDLA, starting with its very title – "Software Development and *Licensing Agreement*" – and including Marvell's obligations to perform acts that required license rights, as well as language that grants rights – including a right to sublicense – that could apply only to a licensee, not an owner. Intelligraphics similarly ignores that well-settled and binding authority prohibits a licensor from suing its licensee until and unless it first terminates or rescinds the license agreement. Because the facts pled or admitted by Intelligraphics preclude it from prevailing on its copyright infringement claim, the Court should enter judgment on the pleadings on the Sixth Cause of Action.

II.    **ARGUMENT IN REPLY.**

    A.    **If Marvell Never Received a License, Paragraph 6.1(b) Would Not Grant It the Right to "Sublicense."**

If the SDLA did not contemplate that Marvell is a licensee, the rights granted by Paragraph 6.1(b) would make no sense. The language of Paragraph 6.1(b) is incompatible with Intelligraphics' claim that Marvell received no license. [REDACTED]

Indeed, if the SDLA contemplated only that Marvell would accede to ownership of the Custom Software, and never receive a license to the Custom Software as a whole, Paragraph 6.1(b) would be entirely silent regarding whether Marvell had the right to grant further licenses.

"It is well established in … copyright law that a … copyright licensee may not sub-license his licensed intellectual property rights without express permission from the licensor." *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 988 (9th Cir. 2006) (citing *Gardner v. Nike, Inc.*, 279 F.3d 774 (9th Cir. 2002)). Because a copyright *owner*, by contrast, is not so encumbered, the owner of the Custom Software needs no such rights. *See, e.g.*, *id.* Thus, unless Marvell received a license prior to transfer of ownership, ■■■■■■■■■■■■■■■■■■■ Intelligraphics' proposed reading simply cannot be squared with the language of the SDLA and the applicable law.

### B. The SDLA, not "All Contracts for Software Development," Granted Marvell a License Sufficient to Meet Its Testing and Acceptance Obligations.

Contrary to Intelligraphics' straw man argument, Marvell does not claim that "***all*** contracts for software development must grant the recipient a license to test it." Opp. at 9 (emphasis added). To the contrary, as set forth in Marvell's opening brief, ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■ SDLA, Ex. A, ¶ 3.2; *see generally*, Opening Br. at 9-10 (quoting same). Indeed, even Intelligraphics' own complaint admits that the SDLA provides that "payment for the completed Milestone Deliverables from MARVELL … ***would occur only after*** INTELLIGRAPHICS completed the development of and delivered specific Milestone Deliverables of the Custom Software and ***MARVELL approved and accepted them***." Compl., ¶ 9 (emphasis supplied); *see also* Opening Br. at 10 (citing same).[1] Thus, before the SDLA permits copyright ownership to transfer from Intelligraphics to Marvell, the SDLA in particular – not software development contracts generally – requires ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

---

[1] Intelligraphics' Opposition repeatedly contradicts its own complaint, insisting that despite the clear language of Paragraph 6.1(b) and Marvell's obligations under Paragraph 3.2, "[t]he SDLA only provides for Marvell to obtain the right to use the Custom Software … after it pays the full purchase price for full ownership of the Custom Software." Opp. at 10. But in a motion for judgment on the pleadings, it is axiomatic that a party's pleadings control.

PUBLIC REPLY I/S/O MOT. FOR J. ON THE PLEADINGS ON SIXTH CAUSE OF ACTION – CASE NO. C-07-2499 JCS

1 ██████████████████████████████████████████████████████████████████████.

2 *See* SDLA, ¶ 3.2.

3 Absent a license, each of those acts would infringe Intelligraphics' copyright. *See* 17 U.S.C. § 106 (copyright owner "has the exclusive rights to reproduce the copyrighted work…; to prepare derivative works based upon the copyrighted work; [and] to distribute copies … of the copyrighted work"). But Paragraph 6.1(b) of the SDLA ████████████████████████ ███

████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████

SDLA, Ex. A, ¶ 6.1(b) (emphasis added). Thus, even if Paragraph 6.1(a), isolated from Paragraph 3.2, might arguably be interpreted to require Marvell to complete payment before Paragraph 6.1(b) granted Marvell the right to copy or distribute the Custom Software – and it cannot – an arguable interpretation cannot create a condition precedent: "Conditions precedent are disfavored and will not be read into a contract unless required by ***plain, unambiguous language***." *Effects Assocs. v. Cohen*, 908 F.2d 555, 559 n. 7 (9th Cir. 1990) (emphasis added). Intelligraphics' proposed interpretation cannot prevail, as a matter of law.

Before ownership could possibly transfer to Marvell, the SDLA in particular – not development agreements generically – explicitly obliged Marvell to engage in actions that required a license. If Intelligraphics were correct that the SDLA granted Marvell no license, the SDLA would oblige Marvell to infringe Intelligraphics' copyrights as a condition precedent to full payment. The only reasonable interpretation of Paragraph 6.1(b) of the SDLA is that it granted precisely the license that Marvell needed, and any conditions precedent arguably imposed by Paragraph 6.1(a) apply only to transfer of ownership.

1    C.    **The Fact that Marvell Retains its Preexisting Ownership Rights Is Irrelevant**
2          **to Marvell's License in the Custom Software as a Whole.**

3    Intelligraphics makes much of the first sentence of Paragraph 6.1(b), which provides that
4    █████████████████████████████████████████████████████████████████████████████
5    █████████████████████████████████████████████████████████████████████████████
6    ████████████████████████████████████████████████████  According to
7    Intelligraphics, this sentence "made it clear that [Paragraph 6.1(b)] is concerned with the period
8    after Intelligraphics transfers its ownership rights to Marvell." Opp. at 13. Intelligraphics
9    ignores, however, that in both the original SDLA and the SDLA as amended, Paragraph 1.3
10   defines ████████████████████████████████████████████████████████████████████
11   ██████████████████████ and Paragraph 1.9 defines ██████████████████████████
12   ████████████████████████████████████████. It is those rights – those *preexisting*
13   rights – that the first sentence of Paragraph 6.1(b) provides that ██████████████████

14   D.    **Intelligraphics' Failure to Rescind or Terminate the SDLA Precludes Its**
15         **Infringement Claim.**

16   Intelligraphics asserts – without citation – that interpreting Paragraph 6.1(b) of the SDLA
17   to grant Marvell an immediate and unconditional license would permit that license "to …
18   essentially go on forever – even if Marvell never made payment of the Development Fee under
19   the SDLA." Opp. at 4. Intelligraphics' glaring failure to cite any supporting authority is
20   instructive, however, because well-settled precedent compels the opposite result.

21   "Although licensing agreements are not terminable at will, under federal and [California]
22   state law a material breach of a licensing agreement gives rise to a right of rescission which
23   allows the nonbreaching party to terminate the agreement." *Rano v. Sipa Press, Inc.*, 987 F.2d
24   580, 586 (9th Cir. 1993) (citing *Costello Publishing Co. v. Rotelle,* 670 F.2d 1035, 1045 (D.C.
25   Cir. 1981); 3 NIMMER ON COPYRIGHT § 10.15[A] at 112 (Bender 1992)). "After the agreement is
26   terminated, any further distribution would constitute copyright infringement." *Id.* (citing
27   *Costello,* 670 F.2d at 1045). But breach does not automatically trigger termination or rescission;
28

1  rather, "the license must formally be rescinded before an infringement action … can proceed."
2  *TVT Records v. Island Def Jam Music Group*, 412 F.3d 82, 93 (2d Cir. 2005) (citing, *inter alia*,
3  *Rano*, 987 F.2d at 586).  The consequences of Intelligraphics' decision not to terminate or
4  rescind the SDLA include its inability to sue for infringement.

### III.  CONCLUSION.

Even assuming that all the facts pled by Intelligraphics might be proved true at trial, the parties' SDLA granted Marvell a nonexclusive license to any Custom Software delivered by Intelligraphics.  Because a licensor may not press a claim for copyright infringement against its licensee, Intelligraphics cannot prevail on the Sixth Cause of Action.  The Court should enter judgment on the pleadings accordingly.

Dated: May 22, 2008                MAYER BROWN LLP

By: */s/*
    Michael A. Molano

    Attorneys for Defendant and Counterclaimant
    MARVELL SEMICONDUCTOR, INC.

*Filer's Attestation: Pursuant to General Order No. 45, Section X(B), the filer hereby attests that the signatory's concurrence in the filing of this document has been obtained.*